EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| In re: | 2025 TSPR 32 |
| Carlos G. Chaves Torres | 215 DPR ___ |

Número del Caso: TS-13,924

Fecha: 27 de marzo de 2025

Oficina de Inspección de Notarías:

    Lcdo. Manuel E. Ávila De Jesús
    Director

Representante legal del Lcdo. Carlos G. Chaves Torres:

    Lcdo. Juan C. Salichs Pou

Materia: Derecho Notarial – En aquellos contratos de arrendamiento donde se incluye una cláusula accesoria de opción a prórroga, cuyo ejercicio requiere del otorgamiento de una escritura pública, los respectivos aranceles notariales por la prórroga se pagarán al momento del otorgamiento de esta última.

Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

*In re:*

Carlos G. Chaves Torres          TS-13,924

Opinión del Tribunal emitida por el Juez Asociado señor COLÓN PÉREZ.

En San Juan, Puerto Rico a 27 de marzo de 2025.

La presente divergencia de criterio entre la Oficina de Inspección de Notarías y el Lcdo. Carlos G. Chaves Torres nos brinda la oportunidad de puntualizar cuándo, en una cláusula accesoria de opción a prórroga, incluida en un contrato de arrendamiento, se cancelan derechos arancelarios notariales.

Adelantamos que, tras evaluar el derecho aplicable al asunto ante nuestra consideración, hoy pautamos que, en aquellos contratos de arrendamiento donde se incluye una cláusula accesoria de opción a prórroga, y en la cual se establece como condición

para ejercer dicha prórroga el otorgamiento de una escritura pública, es al momento de dicho otorgamiento que se pagan los respectivos aranceles notariales. Veamos.

I.

El pasado 19 de abril de 2023, el Lcdo. Manuel E. Ávila De Jesús, Director de la Oficina de Inspección de Notarías (en adelante, "ODIN"), presentó ante este Tribunal un *Informe especial sobre incumplimiento en la corrección de deficiencias notificadas, sobre divergencias de criterio y en solicitud de remedios* relacionada con el trabajo notarial del Lcdo. Carlos G. Chaves Torres (en adelante, "licenciado Chaves Torres"). En la mencionada moción, la ODIN nos informó que, como parte del proceso ordinario de inspección, los días 29 de mayo de 2019 y 6 de junio de 2019 se realizó el examen de la obra protocolar formada por el referido letrado.[1] En virtud de ese proceso, se inspeccionaron los tomos de los Protocolos Notariales correspondientes a los años naturales 2005 al 2016, así como su Libro de Registro de Testimonios.

Como resultado de las inspecciones antes mencionadas, pero previo a la visita de reinspección, el 26 de julio de 2019 la ODIN le remitió al licenciado Chaves Torres una *Notificación especial pre informe 77(k)*.[2] En ésta, la ODIN le informó al referido letrado que, en su obra notarial, se

---

[1] El licenciado Chaves Torres fue admitido al ejercicio de la abogacía el 30 de enero de 2002 y a la notaría el 7 de marzo de 2005.

[2] Cabe destacar que, en *In re Enmiendas al Reglamento Notarial*, 206 DPR 752 (2021), se añadieron los incisos (f) y (g) a la Regla 77 en el referido reglamento, redesignando los restantes incisos, siendo hoy en día la Regla 77(m) la antes Regla 77(k).

había identificado una deficiencia arancelaria preliminar de $54,359.00. Por lo anterior, la referida dependencia de este Tribunal le concedió un término de quince (15) días al licenciado Chaves Torres para que expresara las razones por las cuales ésta no debía solicitarnos la incautación preventiva de su obra y su sello notarial. Además, le requirió que, dentro del mismo término, certificara haber cancelado la mencionada deuda arancelaria.

En respuesta, el 8 de agosto de 2019 el licenciado Chaves Torres compareció ante la ODIN mediante una carta por correo certificado. En síntesis, el referido letrado expresó tener una **divergencia de criterio** en torno a las deficiencias arancelarias identificadas en la inspección realizada.

**En particular, el licenciado Chaves Torres arguyó que las deficiencias arancelarias identificadas por la ODIN en la inspección de parte de su obra notarial no son sobre la cuantía fija y determinada de los instrumentos otorgados, sino sobre opciones de término condicionadas, que surgen en algunos de los instrumentos públicos otorgados.** Por lo anterior, el referido letrado solicitó a la ODIN que se le permitiera continuar con el proceso ordinario de inspección según establecido en la Regla 77, inciso (i), del Reglamento Notarial de Puerto Rico, *infra*, y, de ser necesario, bajo el inciso (j) de la referida regla, *infra*.

Así las cosas, el 12 de agosto de 2019 la ODIN remitió una comunicación al licenciado Chaves Torres intitulada

*Acuse de recibo notificación especial pre informe 77k*. En lo pertinente, y en respuesta a la comunicación del referido letrado, para validar su proceder, la referida dependencia de este Tribunal hizo referencia a cierta *Resolución* emitida el 23 de junio de 1975 por el Tribunal Superior de Puerto Rico, Sala de San Juan, Caso Civil Núm. 74-2848 sobre divergencia de criterio, en la que dicho foro concluyó que al no existir una exención expresa en la Ley 101 de 12 de mayo de 1943, *infra*, el notario debía cancelar los sellos de rentas internas por los arrendamientos y sus respectivas prórrogas.[3]

Así las cosas, el 23 de diciembre de 2019 la ODIN le remitió al licenciado Chaves Torres una *Notificación informe*

---

[3] En dicha *Resolución*, el mencionado foro de primera instancia tuvo ante su consideración una controversia similar a la que se encuentra ante nos. En específico, se evaluó si el notario en aquel caso tenía la obligación, o no, de cancelar los sellos de rentas internas en cierta escritura de arrendamiento de bienes inmuebles por concepto de prórrogas.

En aquella ocasión, el notario fundamentó su oposición basándose en la Ley del Arancel de los Derechos que se han de Pagar por las Operaciones en el Registro de la Propiedad, Ley Núm. 91 de 30 de mayo de 1970 (30 LPRA sec. 1767a *et seq*.) según vigente en aquel momento, la cual establecía que en ningún caso se tomarían en consideración las prórrogas para el cálculo de los derechos a pagarse en las operaciones registrales. Además, argumentó que el estatuto que regía, -- y aun rige --, el cobro de derechos para los instrumentos públicos, la Ley de Arancel Notarial, *infra*, no definía el término "cuantía".

Tras un breve análisis del derecho aplicable, el Tribunal Superior determinó que, al no existir una exención expresa en la Ley 101 de 12 de mayo de 1943, *infra*, el notario debía cancelar los sellos de rentas internas por los arrendamientos y sus respectivas prórrogas. Dicha determinación fue emitida el 26 de junio de 1975 por el Juez Superior señor Domingo Raffucci.

**Cabe señalar que, en el *Informe* antes mencionado de 19 de abril de 2023, la referida dependencia de este Tribunal expresó que la antes discutida *Resolución* de 1975 del foro de primera instancia fue incluida "por ser el fundamento vinculante y normativo que motiva el señalamiento por concepto de deficiencia arancelaria imputado".** Véase, *Informe especial sobre incumplimiento en la corrección de deficiencias notificadas, sobre divergencias de criterio y en solicitud de remedios* de 19 de abril de 2023 presentado por la ODIN, pág. 2.

*final de inspección RUA 13,924 (Regla 77k)*. En ésta, la ODIN le expresó al referido letrado de la existencia de determinadas deficiencias en la obra protocolar autorizada, cuyo examen comprendió el periodo de los años naturales 2005 al 2016, así como una deficiencia arancelaria de cuarenta y siete mil seiscientos sesenta dólares ($47,660.00), entre otros señalamientos.

En respuesta, el 7 de enero de 2020 el licenciado Chaves Torres le informó a la ODIN sobre las gestiones subsanatorias encaminadas a finiquitar el proceso de inspección de su obra notarial. Ahora bien, en lo relacionado a las deficiencias arancelarias en aquellos contratos de arrendamiento que incluían una opción de prórrogas, el referido letrado mantuvo sus argumentos sobre la existencia de divergencia de criterio.

En síntesis, éste expresó que la intención de elevar los contratos a documentos públicos era para que fuesen inscritos en el Registro de la Propiedad por el término específico del arrendamiento y no por los términos adicionales de las prórrogas. Además, el licenciado Chaves Torres se opuso a la normativa utilizada por la ODIN para fundamentar las faltas arancelarias, -- entiéndase, la determinación del foro de primera instancia --, por no ser, a su entender, vinculante para éste.

De igual forma, el referido letrado expresó que las transacciones de arrendamiento comercial suponen cuantías monetarias considerables y que, de ser la normativa

aplicable el que se deba incluir las prórrogas en la determinación arancelaria, sería un absurdo económico. Lo anterior, debido a que, para el licenciado Chaves Torres, aplicar lo intimado por la ODIN convertiría la inscripción registral de los contratos de arrendamientos con prórrogas en una actividad sumamente onerosa, teniendo un efecto negativo en las transacciones comerciales.

Por último, el licenciado Chaves Torres arguyó que, en aquellas ocasiones que se ejercía la opción de las prórrogas en los contratos de arrendamiento, el mencionado acuerdo se establecía mediante escritura pública, cancelando los debidos aranceles. Lo anterior, aun cuando la ODIN expresa que este tipo de escritura pública posterior es un documento sin cuantía.

Evaluados los argumentos presentados por el licenciado Chaves Torres, el 12 de febrero de 2020 la ODIN le remitió a éste su análisis de derecho en un documento intitulado *Divergencia de criterio sobre cancelación de aranceles notariales relacionados con los arrendamientos con prórrogas*. **En síntesis, la ODIN, citando a *Atocha Thom McAn, Inc. v. Registrador*, *infra*, arguyó que, para efectos del pago de aranceles notariales, el término del contrato de arrendamiento, con la condición resolutoria que consiste en la renuncia al ejercicio del derecho de las opciones de prórrogas por el arrendatario, es aquel que incluye las opciones de prórroga. Esto, porque así lo dispone el acuerdo entre los contratantes. Por lo tanto, se trataría de una**

**sola obligación íntegra, que surge desde que las partes se obligan.**

De esta forma, la ODIN le ordenó al licenciado Chaves Torres la cancelación de la deficiencia arancelaria notificada ascendiente a cincuenta y dos mil doscientos siete dólares ($52,207.00), así como completar la subsanación del resto de su obra. Lo anterior, debía ser cumplido por el referido letrado en o antes del 17 de abril de 2020.

No obstante, debido a la emergencia provocada por la pandemia del COVID-19, el proceso de subsanación de la obra protocolar del licenciado Chaves Torres fue interrumpido hasta el mes de enero de 2023. Ahora bien, la ODIN arguyó que, tras varios intentos para continuar los procesos de subsanación, éstos fueron infructuosos. Por lo anterior, el 19 de abril de 2023 la referida dependencia de este Tribunal compareció ante nos mediante el *Informe especial sobre incumplimiento en la corrección de deficiencias notificadas, sobre divergencias de criterio y en solicitud de remedios* relacionada con el referido letrado.

Por su parte, el 31 de julio de 2023 compareció ante nos el licenciado Chaves Torres mediante *Respuesta a informe especial sobre incumplimiento en la corrección de deficiencias notificadas, sobre divergencia de criterio y en solicitud de remedios*. **En síntesis, éste expresa que la divergencia de criterio se centra en si una opción de prórroga, incluida como una <u>obligación suspensiva</u> y anexa a**

**un contrato de arrendamiento, cancela sellos de rentas internas al momento del otorgamiento de la escritura de arrendamiento y, de ser así, sobre cuál cuantía. Lo anterior, aun cuando existe incertidumbre sobre la existencia de una obligación, al no haberse cumplido con la condición. En particular, la ratificación mediante escritura pública.**

Trabada así la divergencia de criterio entre la ODIN y el licenciado Chaves Torres, y con el beneficio de la comparecencia de las partes, procedemos a exponer la normativa aplicable a los asuntos ante nuestra consideración.

II.

A.

Como es sabido, en nuestro ordenamiento jurídico, la función notarial está regida por las disposiciones de la Ley Notarial de Puerto Rico, Ley Núm. 75 de 2 de julio de 1987, según enmendada, 4 LPRA sec. 2001 *et seq.*, del Reglamento Notarial de Puerto Rico, 4 LPRA Ap. XXIV, y del Código de Ética Profesional, 4 LPRA Ap. IX. *In re Colón Alvarado*, 212 DPR 628, 633 (2023); *In re González Pérez*, 208 DPR 632, 645 (2022); *In re Sánchez Reyes*, 204 DPR 548, 565 (2020). Entre los referidos documentos, de particular importancia para la correcta disposición de los asuntos ante nuestra consideración, resulta ser el Artículo 2 de la Ley Notarial de Puerto Rico, *infra*, el cual consagra el principio de la fe pública notarial, disponiendo claramente que:

> El notario es el profesional del Derecho que ejerce una función pública, autorizado para dar fe y autenticidad conforme a las leyes de los negocios jurídicos y demás actos y hechos extrajudiciales que ante él se realicen, sin perjuicio de lo dispuesto en las leyes especiales. Es su función recibir e interpretar la voluntad de las partes, dándole forma legal, redactar las escrituras y documentos notariales a tal fin y conferirle[s] autoridad a los mismos. La fe pública al notario es plena respecto a los hechos que, en el ejercicio de su función personalmente ejecute o compruebe y también respecto a la forma, lugar, día y hora del otorgamiento. 4 LPRA sec. 2002.

En virtud de lo anterior, hemos sentenciado que un documento notarial, que está avalado por la dación de fe de un notario, se presume que cumple con todas las formalidades de ley y brinda la confianza de que los hechos jurídicos y las circunstancias que se acreditan fueron así percibidos y comprobados por el notario o ejecutados por éste. *In re Vélez Torres*, 209 DPR 848, 864 (2022); *In re Santiago Maldonado*, 206 DPR 1029, 1041 (2021); *In re Villalona Viera*, 206 DPR 360, 371 (2021). Por tal razón, el notario debe ejercer su función con extremo cuidado, esmero y celo. *In re Colón Alvarado*, *supra*; *In re Vélez Torres*, *supra*, pág. 863; *In re Rivera Pérez*, 208 DPR 805, 817 (2022). Además, en el ejercicio de su ministerio, éstos y éstas "ejerce[n] una puntillosa función que robustece de seguridad y certeza jurídica los hechos y actos que se consignan bajo su fe notarial". L.F. Estrella Martínez, *El notariado latino en Puerto Rico como exponente de las aspiraciones del sistema jurídico iberoamericano*, 60 (Núm. 2) Rev. Der. Pur. 545, 546 (2021).

Así pues, es norma firmemente establecida que, como parte de nuestro poder inherente para regular la profesión de la abogacía y la notaría, debemos asegurarnos de que los notarios y las notarias ejerzan sus funciones de manera responsable, competente y diligente. *In re Santiago Maldonado*, *supra*, pág. 1039; *In re Rafucci Caro*, 206 DPR 589, 605 (2021); *In re Villalona Viera*, *supra*, pág. 369. En ese sentido, y con el objetivo de velar por el cumplimiento de sus funciones, el Artículo 62 de la Ley Notarial de Puerto Rico, *infra*, establece que:

> La inspección de Notarías y el examen de los Protocolos estará a cargo del Juez Presidente del Tribunal Supremo de Puerto Rico. El Juez Presidente nombrará un Director de la Oficina de Inspección de Notarías y notarios de experiencia como inspectores, todos los cuales estarán cubiertos por las disposiciones de la Ley Núm. 64 de 31 de mayo de 1973, enmendada, conocida como "Ley de Personal de la Rama Judicial", y de las reglas y reglamentos que se adopten en virtud de la misma. [...] El Tribunal Supremo, previa oportunidad al notario de ser oído en su defensa[,] podrá corregirlo disciplinariamente mediante reprimenda, multa que no exceda de quinientos (500) dólares o suspensión temporal o permanente de su cargo en caso de cualquier infracción a las disposiciones de esta ley o de cualquier otra ley relacionada con el ejercicio del notariado, todo ello sujeto a lo dispuesto en el Artículo 65 de esta Ley. Tanto el Tribunal Supremo como el Juez Presidente podrán delegar en el Director de Inspección de Notarías cualesquiera funciones relacionadas con la supervisión de los notarios y el ejercicio del notariado que estimen conveniente, con la excepción de la facultad de imponer sanciones disciplinarias. 4 LPRA sec. 2102.

Es, precisamente, en el ejercicio de la anterior prerrogativa, que este Tribunal ha delegado en la ODIN la tarea de velar por el cumplimiento de los deberes propios

del ejercicio de la profesión notarial. *In re Gerena Ramos*, 196 DPR 57, 60 (2016); *In re Colón Cordovés*, 195 DPR 543, 547 (2016). Véase, *In re Bello Rivera*, 192 DPR 812, 816 (2015). Es pues, la ODIN, uno de los brazos operacionales de este Tribunal. *In re Román Rodríguez*, 212 DPR 641, 646 (2023); *In re Marrero Martínez*, 212 DPR 464, 473 (2023); *In re Alers Morales*, 204 DPR 515, 519 (2020).

B.

Establecido lo anterior, conviene señalar aquí que, por ser la función del notariado una delicada, y con las serias implicaciones legales que podría conllevar un ejercicio defectuoso y descuidado de ésta, "la ley notarial y su reglamento delimitan un procedimiento específico para realizar [...]inspecciones y para dilucidar cualquier controversia que pueda suscitarse en dicho proceso". *In re Godínez Morales*, 161 DPR 219, 232 (2004). En específico, en el Artículo 63 de la Ley Notarial de Puerto Rico, 4 LPRA sec. 2103, y las Reglas 77 a la 81 del Reglamento Notarial de Puerto Rico, 4 LPRA Ap. XXIV, secs. 77-81, se establecen las pautas a seguir, tanto por los notarios y las notarias que ejercen esta importante función, como por la ODIN, en su función de inspeccionar la obra notarial.

Así las cosas, y de conformidad con la normativa antes expuesta, mientras se lleva a cabo el proceso de inspección, "[d]e surgir en esta etapa divergencias de criterio entre el Inspector de Protocolos y el notario,[...] el Art. 63 de la Ley Notarial, [*supra*, y la Regla 80 del Reglamento

Notarial de Puerto Rico, 4 LPRA Ap. XXIV, sec. 80,] proveen los procedimientos para dirimir las discrepancias en el foro judicial". *In re Gómez Rijos*, 129 DPR 811, 816 (1992). Véase, *In re Amundaray Rivera*, 163 DPR 251, 261 esc. 4 (2004). En específico, el mencionado artículo de la Ley Notarial de Puerto Rico establece que:

> Si durante el curso de la inspección del protocolo notarial surgiera cualquier divergencia de criterio entre el Inspector de Protocolos y el Notario, en relación con la forma y la manera de llevar este sus Protocolos y Registros [de] Testimonios con respecto al cumplimiento de esta ley, la cancelación de derechos o cualquier otra ley relacionada con las formalidades de los instrumentos o documentos, el Inspector deberá hacerlo constar en su informe haciendo una breve exposición de los hechos y de las razones en que se funda la controversia. Dicho informe será remitido a la Sala del Tribunal Superior, sin pago de derechos o impuestos de alguna clase para que oyendo al Inspector y al notario resuelva la controversia. La resolución recaída podrá ser revisada por el Tribunal Supremo mediante recurso de "certiorari" interpuesto dentro de los treinta (30) días siguientes a ser notificados, todo ello sujeto a lo dispuesto en el Artículo 65 de esta Ley. 4 LPRA sec. 2103.

Por su parte, y más en detalle, la Regla 77 del Reglamento Notarial, *infra*, establece el proceso a seguir por los Inspectores de la ODIN cuando, durante el procedimiento ordinario de inspección de protocolos y registros, surge una discrepancia entre éstos y el notario o la notaria. En particular, en su inciso (m) esta indica que:

> (m) Si luego de la reunión final subsiste alguna falta o divergencia de criterio, el Inspector dejará al notario una copia del señalamiento de faltas correspondiente a la

inspección final, firmada como recibida por el notario o por la persona autorizada por éste.

El Inspector rendirá al Director de la Oficina de Inspección de Notarías, dentro del término de sesenta (60) días posteriores a la inspección final, un informe de las faltas o divergencias de criterios referentes a la obra notarial inspeccionada. El Director de la Oficina de Inspección de Notarías procederá en conformidad con lo dispuesto en la Regla 79. 4 LPRA Ap. XXIV, sec. 77

En esa línea, la Regla 79 del Reglamento Notarial de Puerto Rico, *infra*, detalla el procedimiento que se ha de llevar a cabo una vez el Inspector presenta su *Informe* al Director de la ODIN. En específico, la referida Regla 79, *infra*, establece que:

El notario podrá notificar al Director de la Oficina de Inspección de Notarías, dentro de los quince (15) días siguientes a la fecha de la notificación del informe, cualesquiera objeciones que tenga a éste.

El Director de la Oficina de Inspección de Notarías dentro de los cuarenta y cinco (45) días siguientes a la fecha del informe final deberá:

(A) Conceder un término adicional al notario para que subsane las faltas señaladas.

**(B) Iniciar o instruir al Inspector para que inicie el procedimiento provisto en la sec. 2103 de este título [(proceso ante el Tribunal de Primera Instancia)]en cuanto a cualesquiera divergencias de criterio.**

(C) Decretar su sobreseimiento, por no justificarse acción posterior alguna. El informe, junto con los escritos que haya recibido del notario será archivado en el expediente de éste. El Director notificará de dicha acción al notario por escrito para que la una al Protocolo objeto del informe.

> (D) Determinar que el notario no ha incurrido en la falta señalada e instruir a tales efectos al inspector.
>
> **(E) Someter al Tribunal Supremo un informe junto con cualesquiera escritos que haya recibido del notario.** (Énfasis nuestro). 4 LPRA Ap. XXIV, sec. 79.

Sobre esto último, hemos establecido que, el acudir al Tribunal de Primera Instancia para aclarar una divergencia de criterio "es sólo uno más de los cinco cursos de acción que, según mencionamos anteriormente, el Director de la [ODIN] tiene disponible en ocasión de recibir el informe final del inspector". *In re Godínez Morales*, *supra*, págs. 239-240. Esto, debido a que, según hemos sentenciado,

> el Director de la [ODIN] tiene la libertad de escoger cualquiera de los cinco cursos de acción contenidos en la Regla 79 del Reglamento Notarial, *ante*, ello sin que, de ninguna manera, esté obligado a optar por uno en específico. A dicho funcionario se le ha conferido amplia discreción para escoger aquel remedio que entienda más conveniente para la situación particular que se le presente. Además, el lenguaje de dicha regla no es restrictivo en cuanto a ese aspecto. *In re Godínez Morales*, *supra*, págs. 240. Véase, además, *In re Colón Muñoz*, 131 DPR 121 (1992).

Habiendo discutido la importancia de la ODIN, aquello relativo a su función, y los procedimientos que tiene disponible su Director cuando tiene ante sí una divergencia de criterio con determinado notario o notaria, nos corresponde ahora evaluar, brevemente, lo pertinente al pago de aranceles por derechos sobre documentos públicos otorgados en Puerto Rico. Procedemos a ello.

III.

A.

Sabido es que la Ley de Arancel Notarial, Ley Núm. 101 de 12 de mayo de 1943, según enmendada, 4 LPRA sec. 851 *et seq.*, es el cuerpo legal que establece lo pertinente a las cuantías a cobrar por derechos sobre documentos públicos otorgados en Puerto Rico.[4] El mencionado estatuto "es de naturaleza tributaria". *Inspector de Protocolos v. Dubón*, 107 DPR 50 (1978). Por lo que, en caso de duda sobre si

---

[4] En particular, la Sección 2 de la Ley de Arancel Notarial dispone lo siguiente:

> En cada documento e instrumento original, autorizado por notario público, que haya de ser protocolizado, y sus copias, se fijarán y cancelarán sellos de rentas internas de los siguientes valores o denominaciones:

> (a) Cuando dicho documento sea por una cuantía que no exceda de doscientos cincuenta dólares ($250), cincuenta centavos (50¢) por el original y veinte centavos (20¢) por cada copia.

> (b) Cuando la cuantía exceda de doscientos cincuenta dólares ($250) y no pase de quinientos dólares ($500), un dólar ($1) por el original y cincuenta centavos (50¢) por cada copia.

> (c) Cuando la cuantía exceda de quinientos dólares ($500) y no pase de mil dólares ($1,000), dos dólares ($2) por el original y un dólar ($1) por cada copia.

> (d) Cuando la cuantía exceda de mil dólares ($1,000) y no pase de cinco mil dólares ($5,000), dos dólares ($2) por los primeros mil dólares ($1,000) y cincuenta centavos (50¢) adicionales por cada mil dólares ($1,000) o fracción de mil dólares por el original; y un dólar ($1) por los primeros mil dólares y veinte centavos (20¢) adicionales por cada mil dólares o fracción de mil dólares por cada copia.

> (e) Cuando la cuantía exceda de cinco mil dólares ($5,000), dos dólares ($2) por los primeros mil dólares ($1,000) y un dólar ($1) adicional por cada mil dólares ($1,000) o fracción de mil dólares por el original; y un dólar ($1) por los primeros mil dólares ($1,000) y cincuenta centavos (50¢) adicionales por cada mil dólares ($1,000) o fracción de mil dólares ($1,000) por cada copia. 4 LPRA sec. 851.

aplica alguna exención, tenemos que resolver en contra de su existencia, habida cuenta de que estas son privilegios excepcionales o gracias que concede el Estado para negar los efectos de las normas tributarias generales. *Coop. San Blas v. Registrador*, 201 DPR 544, 558 (2018). Véase, *Pfizer Pharm. v. Mun. de Vega Baja*, 182 DPR 267, 279 (2011). Véase, además, *Texas Co. (P.R.) Inc. v. Tribl. de Contribuciones*, 82 DPR 134, 160-161 (1961).

Dicho ello, con relación a los aranceles notariales, hemos sentenciado que todo notario tiene la ineludible obligación de adherir y cancelar en cada documento o instrumento público que autorice, y en las copias certificadas que de ellos expida, los correspondientes sellos arancelarios. *In re Vázquez Margenat*, 204 DPR 968, 983 (2020); *In re Troche Mercado*, 194 DPR 747, 752 (2016); *In re Román Jiménez*, 161 DPR 727, 731 (2004). Véase, Artículo 10 de la Ley Notarial de Puerto Rico, 4 LPRA sec. 2021. Se trata, pues, de un deber ministerial al que deberá darle cumplimiento estricto y que requiere que el arancel sea adherido al momento de su otorgamiento. *In re Vázquez Margenat*, *supra*, pág. 983; *In re Troche Mercado*, 194 DPR 747, 752 (2016); *In re Román Jiménez*, 161 DPR 727, 731 (2004).

Lo anterior es así puesto que el notario da fe de haber adherido y cancelado los referidos aranceles en el momento en que otorga determinado documento público. *In re Vázquez Margenat*, *supra*, pág. 984; *In re Troche Mercado, supra*, pág.

752; *In re Román Jiménez*, *supra*, pág. 731. Por lo tanto, al no hacerlo, estaría dando fe de haber realizado un acto que realmente no efectuó, lo que constituye una falta extremadamente grave [que conllevaría la imposición de severas sanciones disciplinarias]. *In re Vázquez Margenat*, *supra*, pág. 984; *In re Troche Mercado, supra*, pág. 752*; In re Román Jiménez*, *supra*, pág. 731.

B.

Ahora bien, para evitar que lo anterior llegue a suceder, y con el fin de orientar a las notarias y los notarios del País en el ejercicio del ministerio al que sirven, la Regla 76 del Reglamento Notarial de Puerto Rico, *infra*, establece que:

> **La Oficina de Inspección de Notarías podrá emitir instrucciones generales a los notarios y las notarias, que sean de su competencia, las cuales servirán de guía y orientación en relación con la función notarial. Las instrucciones estarán subordinadas a las leyes, los reglamentos y la jurisprudencia aplicables. En ningún caso las instrucciones servirán de fundamento para un señalamiento de falta de un inspector.**
>
> Las instrucciones generales serán difundidas oportunamente a los notarios y las notarias.
>
> El Director de la Oficina de Inspección de Notarías deberá tener disponible para inspección de los notarios, y el público en general, un compendio actualizado de tales instrucciones generales. (Énfasis nuestro).4 LPRA Ap. XXIV, sec. 76.

En esa dirección, y en lo pertinente al asunto que nos ocupa, el 10 de septiembre de 2013, revisada el 20 de julio de 2016, la ODIN emitió la Instrucción General #15 sobre *Cancelación de aranceles en la obra notarial; función del*

*Inspector o Inspectora de Protocolos y Notarías respecto al cumplimiento de este deber* como parte de sus Instrucciones Generales a los Notarios y las Notarias.[5] En síntesis, la referida instrucción resume el proceso ordinario que deben cumplir las notarias y los notarios en el ejercicio de su deber ministerial en cuanto a la cancelación de aranceles se refiere.

En esa línea, en la antes mencionada instrucción, y citando a *Director Of. Inspección Notarías v. Colón*, 131 DPR 102, 120-121 (1992),[6] la ODIN expone que "mantiene la uniformidad al determinar los aranceles notariales que proceden conforme al estado de derecho vigente establecido, entre otros, por las decisiones del Tribunal de Primera Instancia en casos de divergencias de criterio que vinculan esta Oficina". Véase, *Instrucciones Generales a los Notarios y las Notarias*, *supra*, Instrucción #15, inciso (C), pág. 96.[7]

---

[5] Véase, https://poderjudicial.pr/Documentos/odin/IGNN/IGNN.pdf (última visita, 31 de enero de 2024).

[6] En específico, la referida *Opinión* determinó que:

> Lo aquí resuelto *confirma el estado de derecho vigente*, al cual la gran mayoría de los notarios han dado cumplimiento. Ese estado de derecho fue confirmado por dos (2) sentencias, del Tribunal Superior, una de 1973 y otra de 1981. Además, la Oficina del Director de Inspección de Notarías siempre ha interpretado la ley conforme a lo resuelto en dichas dos (2) sentencias y a lo aquí dispuesto.
>
> **Por ello <u>nuestro dictamen</u> aplica al notario recurrido, quien deberá adherir y cancelar los sellos correspondientes a su obra notarial conforme a lo aquí dispuesto y a todos aquellos notarios cuyos protocolos estén pendientes de aprobación por el peticionario al momento en que emitimos este dictamen.** (Énfasis nuestro). *Director Of. Inspección Notarías v. Colón*, *supra*, págs. 120-121.

[7] Debemos recordar aquí que "[l]as decisiones del Tribunal de Apelaciones y del Tribunal de Primera Instancia no constituyen precedente

Por su importancia para el caso que nos ocupa, resulta necesario llamar la atención a lo dispuesto en la referida Instrucción #15, inciso (C)(4-5), instrucción que establece una guía para el cálculo de los aranceles notariales en los negocios jurídicos de arrendamiento. En particular, la referida instrucción expone que:

> 4. Arrendamiento: el canon mensual o anual multiplicado por el número de meses o años, **incluyendo las [opciones de] prórrogas, si las hubiese, cuando el canon de estas se ha pactado.** Artículos 1432, 1433 y 1066 del Código Civil de Puerto Rico, 31 LPRA secs. 4011, 4012 y 3041; Resolución de 23 de junio de 1975 emitida por el Tribunal Superior, Sala de San Juan, en el caso <u>José R. Seda v. Gabriel Hernández Rivera</u>, Civil Núm. 74-2848, sobre Divergencia de Criterio.
>
> 5. <u>**Arrendamiento con [opción a] prórrogas y con cláusula que exige la ratificación de cada prórroga en escritura pública o el otorgamiento de escritura pública para que estas entren en vigor**</u>: **la escritura pública posterior se considerará un documento sin cuantía.**
>
> El documento original contiene el negocio jurídico con los términos y la cuantía expresa o determinable. <u>Inspector de Protocolos v. Dubón</u>, supra. Por tal razón, se exhorta al notario y notaria que incluyan como documento complementario la escritura original en la que se cancelaron los aranceles. (Énfasis nuestro). Véase, *Instrucciones Generales a los Notarios y las Notarias*, *supra*, Instrucción #15, inciso (C), pág. 96.

Es decir, conforme a la precitada instrucción, las notarias y los notarios deben incluir, como parte del cálculo para el pago del arancel notarial, las prórrogas en

---

vinculante, aunque sí poseen fuerza persuasiva que no debe ser descartada someramente". J. M. Farinacci Fernós, *La doctrina del "stare decisis" en Puerto Rico*, Rev. Jur. UIPR vol. LII 1:67 (2017-2018). Véase, J. M. Farinacci Fernós, *Fuerza Persuasiva: Los Usos Potenciales De Las Decisiones Del Tribunal De Apelaciones En Nuestro Sistema Jurídico*, 51 Rev. Jur. UIPR 361, 365 (2017).

aquellos negocios de arrendamiento. Ello, aun cuando se exija que se ratifique en escritura pública o se exija el otorgamiento de una nueva escritura pública para que sea válida.

IV.

Establecido lo anterior, para validar la corrección de lo antes dicho, corresponde preguntarnos entonces ¿desde qué momento nace una obligación jurídicamente exigible cuando, al ejercer la opción a prórroga que se incluye en un determinado contrato de arrendamiento, se exige la ratificación o el otorgamiento de una nueva escritura pública para su validez? Contestar la anterior interrogante requiere realizar un análisis detallado de la naturaleza de las obligaciones y los contratos en nuestro ordenamiento jurídico, tarea que acto seguido emprendemos.

A.

Como es sabido, en nuestro ordenamiento jurídico las obligaciones nacen de la ley, de los contratos y cuasicontratos, y de los actos y omisiones ilícitos en que intervenga culpa o negligencia. Art. 1042 del Código Civil de Puerto Rico de 1930, 31 LPRA ant. sec. 2992.[8] En lo aquí pertinente, el contrato como fuente de obligación "se refiere al acuerdo de voluntades de dos o más partes, por el cual se crean, modifican o extinguen determinadas

---

[8] Es menester mencionar que, si bien recientemente se aprobó el Código Civil de Puerto Rico de 2020, Ley Núm. 55-2020, según enmendada, 31 LPRA sec. 5311 *et seq.*, la presente controversia surgió mientras estaba vigente el Código Civil de Puerto Rico de 1930, 31 LPRA ant. sec. 1 *et seq.*

relaciones jurídicas". J. A. Cuevas Segarra y otro, *Los Contratos Especiales*, San Juan, Ed. JTS, 1998, pág. 1.

Sobre el particular, el Art. 1206 del Código Civil de Puerto Rico de 1930, 31 LPRA ant. sec. 3371, dispone que un contrato existe desde que una o varias personas prestan su consentimiento y se obligan a dar alguna cosa o prestar algún servicio. Véase, *Aponte Valentín et al. v. Pfizer Pharm.*, 208 DPR 263, 284 (2021); *Demeter Int'l v. Srio Hacienda*, 199 DPR 706, 726-727 (2018); *Rodríguez Ramos et al. v. E.L.A.*, 190 DPR 448, 454 (2014). Por ello, hemos dispuesto que la validez de un contrato está supeditada a que concurran "tres elementos esenciales, a saber: consentimiento, objeto y causa". *Demeter Int'l v. Srio Hacienda*, *supra*, pág. 727. Véase, también, Art. 1213 del Código Civil de Puerto Rico de 1930, 31 LPRA ant. sec. 3391.

De forma específica, los contratos se perfeccionan por el mero consentimiento, y desde entonces las partes se obligan, no sólo al cumplimiento de lo expresamente pactado, sino también a todas aquellas consecuencias que surjan del mismo y que, a su vez, sean conformes a la buena fe, el uso y la ley. Art. 1210 del Código Civil de Puerto Rico de 1930, 31 LPRA ant. sec. 3375. Véanse, además, *Aponte Valentín et al. v. Pfizer Pharm.*, *supra*, pág. 285; *Demeter Int'l v. Srio Hacienda*, *supra*, pág. 727. Lo anterior se debe a que "[l]as obligaciones que nacen de los contratos tienen fuerza de ley entre las partes contratantes, y deben cumplirse al tenor

de los mismos". Art. 1044 del Código Civil de Puerto Rico de 1930, 31 LPRA ant. sec. 2994.

Cónsono con lo anterior, es un axioma en nuestro ordenamiento contractual el principio de la autonomía de la voluntad. *Demeter Int'l v. Srio Hacienda*, *supra*, pág. 727; *Rodríguez García v. UCA*, 200 DPR 929, 943 (2018); *Oriental Bank v. Perapi et al.*, 192 DPR 7, 15 (2014). Conforme a este principio, las partes pueden establecer los pactos, cláusulas y condiciones que tengan por convenientes siempre que no sean contrarias a la ley, la moral y al orden público. Art. 1207 del Código Civil de Puerto Rico de 1930, 31 LPRA ant. sec. 3372.

### B.

Ahora bien, y ya más en detalle, en reiteradas ocasiones hemos expresado que el contrato de arrendamiento puede ser de cosas, de obras o de servicios. Art. 1432 del Código Civil de Puerto Rico de 1930, 31 LPRA ant. sec. 4011. Véase, *SLG Ortiz-Mateo v. ELA,* 211 DPR 772 (2023). Con relación al arrendamiento de cosas, el mismo consiste en que una de las partes se obliga a dar a la otra el goce o uso de una cosa por tiempo determinado y precio cierto. Art. 1433 del Código Civil de Puerto Rico de 1930, 31 LPRA ant. sec. 4012. Véase, *SLG Ortiz-Mateo v. ELA, supra*. Conforme a ello, cuando un contrato de arrendamiento se pacta por tiempo determinado, concluye en la fecha prefijada sin que sea necesario requerirlo. Art. 1455 del Código Civil de Puerto Rico de 1930, 31 LPRA ant. sec. 4062. Véase, *SLG*

*Ortiz-Mateo v. ELA*, *supra.* Esto, con excepción a los casos en que opera la táctica reconducción. Art. 1456 del Código Civil de Puerto Rico de 1930, 31 LPRA ant. sec.4063. Véase, *SLG Ortiz-Mateo v. ELA*, *supra.*

C.

De igual forma, también hemos reconocido los contratos de opción. Sobre estos últimos, hemos sentenciado que son el convenio por el cual una parte (llamada concedente, promitente u optatario) concede a la otra (llamada optante), por tiempo fijo y en determinadas condiciones, la facultad, que se deja exclusivamente a su arbitrio, de decidir respecto a la celebración de un contrato principal. *P.D.C.M. Assoc. v. Najul Bez*, 174 DPR 716, 724 (2008); *Mayagüez Hilton Corp. v. Betancourt*, 156 DPR 234, 246 (2002). Véase, *Atocha Thom McAn, Inc. v. Registrador*, 123 DPR 571, 583 (1989).

De este contrato nace un derecho que confiere al optante la facultad de decidir si se celebra el contrato por el que se opta o no. *P.D.C.M. Assoc. v. Najul Bez*, *supra*, pág. 724; *Mayagüez Hilton Corp. v. Betancourt*, *supra*. Véase, además, J. Puig Brutau, *Fundamentos de Derecho Civil*, 2da ed., Barcelona, Ed. Bosch, 1982, T. II, Vol. II, págs. 48-49. En ese sentido, el derecho de opción no sólo concede al optante la facultad de perfeccionar el contrato definitivo mediante la aceptación de la opción, sino que impone al concedente la obligación de no frustrar el derecho del que goza el optante. *P.D.C.M. Assoc. v. Najul Bez*, *supra*, págs. 724-725 (2008); *Mayagüez Hilton Corp. v. Betancourt*, *supra*, pág. 250. Véase,

además, J. Castán Tobeñas, *Derecho civil español, común y foral*, 14ta ed., Madrid, Ed. Reus, 1988, T. IV, págs. 54-55.

De igual forma, "[e]l contrato de opción, de naturaleza transitoria, puede ser principal o un pacto accesorio a otro". *Mayagüez Hilton Corp. v. Betancourt*, *supra*, pág. 246. Véase, *Atocha Thom McAn, Inc. v. Registrador, supra*. Así pues, la opción es aplicable a un sinnúmero de contratos, entre estos, los de compraventa, sociedad, financiamiento, arrendamiento de cosas y de servicios. *Íd.*

Al respecto, es menester señalar que nuestra doctrina también ha reconocido la figura de la opción de renovar. *Mayagüez Hilton Corp. v. Betancourt*, *supra*, págs. 246-248. Véase, *Atocha Thom McAn, Inc. v. Registrador*, *supra*; *Zeta Enterprises, Inc. v. E.L.A.*, 145 DPR 1 (1998). En particular, ésta "se refiere a la facultad que se le confiere a uno de los contratantes para que, a su arbitrio, decida sobre la renovación o extensión de un contrato ya vigente entre las partes". *Mayagüez Hilton Corp. v. Betancourt*, *supra*, pág. 247. En estos casos, la opción de renovar produce como efecto "una mera modificación de la relación contractual". *Íd.* Es, por lo tanto, una "opción modificativa". *Íd.*

En *Atocha Thom McAn, Inc. v. Registrador*, *supra*, pág. 585, al comparar la figura de opción de extensión de un arrendamiento con aquella de la prórroga, señalamos:

> La diferencia estriba en que mientras en el contrato de prórrogas su continuación es un hecho cierto —pues ya hay acuerdo de voluntades— en el de opción el arrendamiento está sujeto a una

condición incierta: el ejercicio del derecho por
parte del optante. En puridad jurídica no puede,
pues, hablarse de un contrato de prórrogas de
arrendamiento si existe incertidumbre sobre su
existencia. *Mayagüez Hilton Corp. v. Betancourt*,
*supra*, págs. 246-248 (2002).

Dicho ello, en cuanto a la controversia ante nuestra consideración se refiere, solo nos resta por tomar en consideración aquello relacionado al tipo de obligación que se encuentra en las cláusulas en que se exige la ratificación de cada prórroga en escritura pública o el otorgamiento de una nueva escritura pública para que la prórroga entre en vigor. Es decir, ¿es una obligación condicional suspensiva o es una obligación condicional resolutoria?

D.

i.

Para abordar el tema antes reseñado, debemos comenzar nuestro análisis considerando la figura jurídica de las obligaciones condicionales. **En particular, y sobre el alcance de las mismas, el Artículo 1066 del Código Civil de Puerto Rico de 1930, 31 LPRA ant. sec. 3041, -- vigente en el momento en que se desarrollan los hechos que motivan el presente litigio --, disponía que serían exigibles todas las obligaciones cuyo cumplimiento no dependiera de un suceso futuro o incierto, o de un suceso pasado, que los interesados ignoraran.[9] Conforme a ello, en estas obligaciones las partes**

---

[9] Valga señalar que el Artículo 303 del Código Civil de Puerto Rico de 2020, Ley Núm. 55-2020, 31 LPRA sec. 6241, incorporó todo lo relativo a las obligaciones condicionales. En específico, el artículo de referencia preceptúa que "[p]or la condición se supedita la eficacia de un negocio jurídico a que ocurra un hecho positivo o negativo, futuro e incierto". *Íd.*

**adquieren o pierden derechos, dependiendo de la ocurrencia del acontecimiento que constituya la condición.** Art. 1067 del Código Civil de Puerto Rico de 1930, 31 LPRA ant. sec. 3042.

**Es decir, y a modo ilustrativo, en las obligaciones condicionales están presentes todos los elementos de la obligación, por lo que la misma existe; no obstante, para exigir su cumplimiento o su extinción tiene que ocurrir un <u>hecho incierto</u>.** M. García Cárdenas, *El nuevo derecho de obligaciones y contratos: Código Civil 2020*, 1ra ed., San Juan, Ed. MJ, 2021, pág. 65. En ese sentido, el factor de la incertidumbre es esencial en esta clase de obligaciones. *Jarra Corp. v. Axxis Corp.*, 155 DPR 764, 773 (2001). Véanse, además, L. Díez-Picazo y A. Gullón, *Sistema de Derecho Civil: El Contrato en General la Relación Obligatoria*, 11ma ed., Madrid, Ed. TECNOS, 2016, T. I, V. II, pág. 152; Puig Brutau, *op. cit.*, pág. 84. Esto es, la incertidumbre de "si el acontecimiento al que se subordina el efecto de la obligación se producirá o no se producirá". Puig Brutau, *op. cit.*, pág. 84. En otras palabras, "si el vínculo jurídico adquirirá eficacia o la perderá por razón de cumplirse un hecho futuro e incierto, o del conocimiento de un hecho pasado, cuya ocurrencia se desconocía". *Jarra Corp. v. Axxis Corp.*, *supra*, pág. 773.

En esa dirección, es menester señalar que, una vez se cumple la condición, el estado de incertidumbre al que hemos hecho referencia desaparece. Puig Peña, *op. cit.*, pág. 131.

Ahora bien, los efectos de dicho cumplimiento dependerán de la naturaleza de la condición a la que esté sujeta la obligación, entiéndase, si se trata de una condición suspensiva o resolutoria. Díez-Picazo y Gullón, *op. cit.*, pág. 154; Puig Peña, *op. cit.*, pág. 131.

**Al respecto, este Tribunal ha sentenciado que la condición es *suspensiva* cuando la obligación no ha de producir efecto hasta que el acontecimiento ocurra.**[10] *Montalvo v. Valdivieso*, 38 DPR 545 (1928). Ahora bien, si la obligación produce efecto inmediatamente, pero la misma es susceptible de extinción cuando el acontecimiento ocurra, entonces la condición es *resolutoria*.[11] *Íd.*

Respecto a esta última, el Artículo 1066 del Código Civil de Puerto Rico de 1930, *supra*, -- vigente al momento en que se desarrollaron los hechos que dan margen al presente litigio --, disponía que serían exigibles todas las obligaciones sujetas a una condición resolutoria, sin perjuicio de los efectos de la resolución. Esto es que,

---

[10] Sobre el particular, y a modo de ejemplo, el Artículo 303 del Código Civil de Puerto Rico de 2020, *supra*, dispone que "[l]a condición es suspensiva si ocurrido el hecho se produce el efecto del negocio jurídico; y es resolutoria si ocurrido el hecho se extingue el efecto del negocio jurídico". Art. 303 del Código Civil de Puerto Rico de 2020, 31 LPRA sec. 6241.

[11] En palabras del tratadista Puig Brutau:

> Si los efectos que están subordinados a que ocurra el hecho incierto que es la condición consisten en la adquisición de los derechos previstos en la relación obligatoria, se dice que está sometida a condición suspensiva. Si los efectos igualmente subordinados a la condición consisten en la resolución o pérdida de los derechos de momento ya adquiridos en virtud de la obligación, se dice que ésta queda sometida a condición resolutoria. Puig Brutau, *Fundamentos de Derecho Civil*, 3ra ed. rev., Barcelona, Ed. Bosch, T. I, Vol. II, 1985, págs. 87-88.

"contrario a lo que sucede con la obligación afectada a condición suspensiva, la obligación sujeta a condición resolutoria surte efecto legal desde el preciso momento en que surge el concurso de voluntades. Desde ese instante la obligación existe en su integridad como si la condición no se hubiera pactado". (Énfasis omitido). *Atocha Thom McAn, Inc. v. Registrador*, 123 DPR 571, 579 (1989) citando a *Amézaga v. Agudo*, 67 DPR 6, 10 (1947).

Es decir, en las obligaciones sujetas a condición resolutoria, el beneficiado por la misma entra desde luego en el ejercicio de su derecho. Puig Peña, *op. cit.*, pág. 130. Ello es así, pues, "lo típico de la condición resolutoria es que de momento no pone obstáculos al inmediato cumplimiento de lo estipulado, si bien el derecho puede quedar en trance de perderse si se realiza el acontecimiento propio de la condición". (Énfasis omitido). *Íd*.

En esa línea, conviene señalar aquí que, a diferencia de las obligaciones condicionales suspensivas, en las cuales la obligación es exigible una vez se cumple la condición, en las resolutorias cuando se da la condición ocurre el fin de la obligación y, en consecuencia, cesa de existir el vínculo obligatorio entre las partes.[12] García Cárdenas, *op.*

---

[12] Valga señalar que las obligaciones condicionales resolutorias pueden subdividirse, dependiendo de los efectos del cumplimiento de ésta sobre la obligación, en absolutas o relativas. L. Díez-Picazo y A. Gullón, *Sistema de Derecho Civil: El Contrato en General la Relación Obligatoria*, 11ma ed., Madrid, Ed. TECNOS, 2016, T. I, V. II, pág. 159. De forma específica, si la resolución elimina todos los efectos producidos inicialmente, se trata de una condición resolutoria absoluta. *Íd*. No obstante, será resolutoria relativa cuando el cumplimiento de la

*cit.*, pág. 76. En cambio, si la condición resolutoria no se cumple, la obligación "se consolida, es decir, no surge una nueva obligación, sino que subsiste inalterada la original". *Atocha Thom McAn, Inc. v. Registrador*, *supra*, pág. 579 citando a *Amézaga v. Agudo*, *supra*, págs. 10-11.

En resumen, podemos sentenciar que en las obligaciones condicionales las partes subordinan el nacimiento o la extinción de la obligación al acontecimiento incierto que integra la condición. Puig Peña, *op. cit.*, pág. 134. No obstante, las partes también pueden estipular obligaciones a plazo. *Íd*. Este último tipo de obligación, -- entiéndase las obligaciones a plazo --, suele confundirse con las obligaciones condicionales, por lo que vale la pena también discutirlo.

ii.

En esa dirección, en lo relacionado a las obligaciones a plazo o a término, comenzamos nuestro análisis sobre dicha figura jurídica resaltando que estas son "aquellas cuyos efectos han de comenzar o de cesar en un momento futuro y que ha de producirse necesariamente". Puig Brutau, *op. cit.*, pág. 104. Sobre este tipo de obligación, el Artículo 1078 del Código Civil de Puerto Rico de 1930, 31 LPRA ant. sec. 3061, establecía lo siguiente:

> Las obligaciones para cuyo cumplimiento se haya señalado un día cierto, sólo serán exigibles cuando el día llegue.

---

condición extingue para el futuro la relación, pero no elimina los efectos ya producidos. *Íd*. "Para optar entre uno y otro tipo de resolución habrá que atender a los propósitos de las partes y a la naturaleza de la relación obligatoria". *Íd*.

Entiéndase por día cierto aquel que necesariamente ha de venir, aunque se ignore cuándo.

Si la incertidumbre cosiste en si ha de llegar o no el día, la obligación es condicional, y se regirá por las reglas de [los artículos 1066 a 1077 de este Código].

De lo anterior, puede colegirse que en las obligaciones a plazo o a término no existe incertidumbre en cuanto a la realidad de la ocurrencia del suceso, es decir, lo único que resta es que las partes determinen la fecha de la eficacia de la obligación o la cesación de dicha eficacia. García Cárdenas, *op. cit.*, pág. 82. Consecuentemente, "[l]a certidumbre respecto a su llegada es el carácter más importante del término y lo que básicamente le diferencia de la condición; incierta, por definición". I. Viteri Zubia, *El pago anticipado en las obligaciones a plazo: el derecho al reembolso anticipado en el sector específico del crédito*, Valencia, Ed. Tirant Lo Blanch, 2013, pág. 36.

En ese sentido, para que exista una obligación a plazo, debe tenerse la certeza de que el día señalado llegará, -- y con él la exigibilidad de la obligación --, aunque se desconozca el día concreto.[13] Viteri Zubia, *op. cit.*, pág. 37. Por ello, en las obligaciones a plazo:

---

[13] Sobre el particular, el tratadista Viteri Zubia también señala que "para que exista obligación a plazo, el *dies* [(día)] fijado como punto de referencia de la procedencia de su cumplimiento, ha de ser cierto con relación a su llegada, al 'sí', pero no forzosamente respecto al 'cuándo'". (Énfasis en el original). I. Viteri Zubia, *El pago anticipado en las obligaciones a plazo: el derecho al reembolso anticipado en el sector específico del crédito*, Valencia, Ed. Tirant Lo Blanch, 2013, pág. 37.

> [R]esulta determinante […], no sólo el denominado término exacto o cierto (*dies certus an et quando*), que tiene lugar cuando la fecha de exigibilidad queda señalada por referencia a un instante posterior y preciso (el próximo 25 de julio), o por días a contar desde uno determinado (con plazo de 90 días), sino también el término elástico, inexacto o incierto (*dies certus an, incertus quando*), que se produce cuando el momento de cumplimiento se fija en relación a un acontecimiento de necesaria producción, aunque imposible de localizar aún en el calendario (la muerte de alguien).[14] *Íd.*

En definitiva, la característica principal de las obligaciones a plazo es la certeza de que el hecho futuro se producirá. *Íd.*, pág. 36. En cuanto a ello, y a modo ilustrativo, el Artículo 309 del Código Civil de Puerto Rico de 2020, 31 LPRA sec. 6247, dispone que "[e]l plazo supedita el efecto suspensivo o resolutorio de un negocio jurídico a un acontecimiento futuro que necesariamente ha de producirse, aunque se ignore cuándo". **Siendo ello así, "la obligación sometida a plazo nace desde el momento en que se celebra el acto constitutivo; el plazo sólo influye en ella determinando, en cuanto al principio o en cuanto al fin, la duración de sus efectos".** (Énfasis nuestro). Puig Peña, *op. cit.*, pág. 134.

En esa dirección, es menester mencionar que, el cumplimiento del hecho futuro y cierto da paso a la

---

[14] En *Amy v. El Registrador de la Propiedad*, 21 DPR 123 (1914), este Tribunal concluyó que, fijar el cumplimiento de una obligación para un plazo de quince (15) días contados a partir de la muerte de una persona, se entendía como un día cierto en el cual era exigible la obligación contraída. Lo anterior, al razonar que aun cuando ignoramos el momento exacto en que acontecerá nuestra muerte, todos estamos completamente seguros de que ésta llegará algún día. *Amy v. El Registrador de la Propiedad*, *supra*, pág. 3.

clasificación de las obligaciones a plazo en: a) aquellas sometidas a plazo o término suspensivo o inicial, y b) las sujetas a plazo o término resolutorio o final.[15] Puig Brutau, *op. cit.*, pág. 104. En específico, en las obligaciones sujetas a plazo suspensivo, la obligación sólo será exigible al llegar el día cierto. *Íd.* Mientras que, en aquellas sometidas a un término resolutorio o final, la obligación durará hasta la llegada del término para el que ha sido establecida.[16] *Íd.*

### iii.

En fin, "[e]s plazo el hecho futuro que necesariamente ha de ocurrir y al que se supedita el inicio o conclusión de los efectos de un negocio jurídico; es condición si el hecho puede ocurrir o no". Art. 308 del Código Civil de Puerto Rico de 2020, 31 LPRA sec. 6246. Por lo cual, para determinar si una obligación es condicional o a plazo es esencial considerar la certidumbre o incertidumbre de la

---

[15] Asimismo, se ha dispuesto que el plazo en este tipo de obligaciones puede subdividirse en las siguientes categorías: 1) expreso o tácito; 2) ordinario o esencial; 3) en beneficio del acreedor o del deudor o de ambos, o 4) determinado o indeterminado. M. García Cárdenas, *El Nuevo Derecho de Obligaciones y Contratos: Código Civil 2020*, 1ra ed., San Juan, Ed. MJ, 2021, pág. 83. Sobre esta última categoría, Puig Brutau señala que el plazo será determinado cuando "no sólo se sabe que se producirá con seguridad, sino que igualmente es conocido el momento en que llegará, o bien puede ser *indeterminado* cuando sólo se tiene la seguridad de su futuro acontecer, pero sin que se conozca cuándo. Del plazo determinado se dice que es *certus an et certus quando* y del indeterminado se afirma que es *certus an et incertus quando*". (Énfasis en el original). Puig Brutau, *op. cit.*, pág. 105.

[16] Sobre esta última, Luis Díez-Picazo y Antonio Gullón señalan que "las partes pueden pactar estipulaciones en las que se acuerde un vencimiento anticipado del contrato, o de las obligaciones derivadas del mismo, si se producen determinadas circunstancias o se dan determinadas conductas del deudor. Tales estipulaciones están sujetas con carácter general a los límites de la autonomía de la voluntad". Díez-Picazo y Gullón, *op. cit.*, pág. 151.

cual depende el principio o el final de los efectos de la obligación. García Cárdenas, *op. cit.*, pág. 64.

Ello pues, según discutido, en las obligaciones condicionales se subordinan siempre las consecuencias del acto jurídico a un hecho futuro e incierto. L. M. Boffi Boggero, *Tratado de las obligaciones*, 1ra reimpr., Buenos Aires, Ed. Astrea, 1985, T. 3, pág. 291. En cambio, en las obligaciones a plazo se supedita a un hecho, también futuro, pero cierto. *Íd*. Además, mientras la condición subordina la existencia de derechos y obligaciones, el plazo lo hace solamente con su exigibilidad. *Íd*.

Siendo ello así, en el momento de establecer este tipo de cláusulas, las y los notarios deben prestar atención a la intención de las partes, debido a que puede tener importantes repercusiones.

Es, pues, a la luz de la normativa antes expuesta que procedemos a disponer de la controversia ante nos.

V.

En el presente caso, como mencionamos anteriormente, la ODIN arguye que, en escenarios como el de autos, para el cálculo del pago de aranceles notariales, se deben incluir en el ejercicio matemático tanto el término de tiempo por el cual se otorga el contrato de arrendamiento, como el de opción a prórrogas que contiene el mismo. Por el contrario, el licenciado Chaves Torres expresa que la divergencia de criterio se centra en si una opción de prórroga, incluida como una obligación suspensiva y anexa a un contrato de

arrendamiento, cancela sellos de rentas internas al momento del otorgamiento de la escritura de arrendamiento y sobre cuál cuantía. Lo anterior, aun cuando existe incertidumbre sobre la existencia del nuevo contrato de arrendamiento o de su extensión y existe una condición que exige su ratificación en escritura pública. Le asiste la razón tanto a la ODIN como al licenciado Chaves Torres.

Y es que, teniendo en consideración el derecho aplicable, -- y como argumentó la ODIN --, estamos convencidos de que, en el cálculo base en aquellos contratos de arrendamiento que incluyen una condición resolutoria que consiste en la renuncia al ejercicio del derecho de las opciones de prórrogas, se deben de incluir tanto los periodos de arrendamiento, como las prórrogas, para el cálculo de los aranceles notariales. Esto, debido a que el hecho incierto que existe en dicho tipo de acuerdos es el "no uso" de la prórroga por parte de arrendatario, siendo exigibles las prórrogas una vez llegado el término, sin trámite ulterior.

Ahora bien, basados en el derecho antes expuesto, queda también patentemente claro que en aquellas instancias en que las partes exigen la ratificación de la opción de prórroga en escritura pública o el otorgamiento de una nueva escritura pública para que estas entren en vigor, la obligación, -- en este caso pagar los correspondientes aranceles --, no es exigible hasta que ocurra el hecho particular o incierto. Es en este último instrumento público

en el cual nace la obligación de arrendamiento prorrogado y, por tanto, en el cual se puede cobrar los aranceles notariales. Ello es así toda vez que, hasta ese momento, -- entiéndase, hasta que no se ratifica la prórroga en una escritura pública o se otorga una nueva escritura pública --, lo que existe es un contrato de arrendamiento con una cláusula accesoria de opción de renovar o posibilidad de prorrogar el arrendamiento que exige -- como condición suspensiva -- un nuevo instrumento público.

Dicho ello, en aquellas circunstancias en que la condición suspensiva no sea la obligación de ratificar el negocio jurídico mediante escritura pública, se deberán de pagar los correspondientes aranceles notariales en el momento que se otorga el contrato de arrendamiento original.

En particular, realizamos esta salvedad pues la naturaleza del negocio jurídico, cuando se compara un escenario con otro, varía. En el primer escenario, la obligación de prorrogar está sujeta no solo a que el optante decida si, en efecto, extenderá el contrato original, sino que, además, está sujeta a que este último y el concedente acuerden o ratifiquen lo anterior mediante un nuevo instrumento público. Por consiguiente, en estos casos existe la seguridad de que, de extenderse el contrato, se cumplirá con el pago de los aranceles notariales correspondientes.

Por el contrario, en el segundo escenario, la obligación de prorrogar únicamente está sujeta al arbitrio del optante; es decir, no se requiere trámite ulterior fuera

de que éste decida que acepta la opción. Lo anterior implica que no hay certeza respecto al pago de los referidos aranceles por el periodo adicional acordado. Y es precisamente esta particularidad la que nos obliga a mantener, en tales instancias, la norma que rige en la actualidad, entiéndase, el pago de los aranceles notariales por las prórrogas en el momento que se otorga el contrato de arrendamiento original.

Debemos tener presente que, decidir lo contrario, permitiría que se acuerden opciones de prórrogas con la intención de extender la vigencia del instrumento público original sin el pago de los aranceles correspondientes. En otras palabras, esta práctica admitiría prolongar la validez del contrato de arrendamiento sin haber pagado los aranceles por cualesquiera periodos adicionales.

Así las cosas, consideramos que nuestra determinación constituye un balance entre las normas del derecho obligacional y las exigencias tributarias atadas al derecho notarial, sujeto a algunas medidas dirigidas a proteger el erario. La norma pautada no supone, para las partes, una carga mayor a la que, hasta hoy, era la práctica. Más bien, les permite decidir a éstas en qué momento habrán de pagar los aranceles correspondientes a las posibles prórrogas.

Ahora bien, reconociendo el carácter novel de los asuntos ante nuestra consideración, acordamos determinar que la norma aquí establecida tendrá aplicación prospectiva desde la fecha de certificación de esta *Opinión* y *Sentencia*.

En particular, lo anterior significa que, de cara al futuro, en aquellos contratos de arrendamiento donde se incluyese una cláusula accesoria de opción a prórroga, y en la cual se estableciese como condición para ejercer dicha prórroga el otorgamiento de una escritura pública, será al momento del otorgamiento de esta última cuando se deberán de pagar los respectivos aranceles notariales. Por otro lado, en aquellos contratos de arrendamiento donde no se incluya dicha salvedad, pero sí se incluyese una prórroga, será al momento de la otorgación del referido contrato donde se deberán de pagar los correspondientes aranceles notariales, tanto por el término del arrendamiento pactado, como por las prórrogas.

## VI.

Por los fundamentos antes expuestos, se le ordena al licenciado Chaves Torres a que en un término de treinta (30) días complete la subsanación de su obra notarial y acredite el cumplimiento con lo antes ordenado. Se le apercibe que su incumplimiento podría conllevar serias consecuencias, como la suspensión de la notaría.

Se dictará *Sentencia* de conformidad.


Ángel Colón Pérez
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

*In re:*

Carlos G. Chaves Torres          TS-13,924

SENTENCIA

En San Juan, Puerto Rico a 27 de marzo de 2025.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte de la presente Sentencia, se le ordena al Lcdo. Carlos G. Chaves Torres a que en un término de treinta (30) días complete la subsanación de su obra notarial y acredite el cumplimiento con lo antes ordenado. Se le apercibe que su incumplimiento podría conllevar serias consecuencias, como la suspensión de la notaría.

Lo pronunció, manda el Tribunal y certifica el Secretario del Tribunal Supremo de Puerto Rico. La Jueza Presidenta Oronoz Rodríguez disiente y emite las expresiones siguientes:

> "La Opinión mayoritaria busca garantizar el recobro de aranceles notariales en escrituras de arrendamiento que contengan opciones de prórrogas a través de la inclusión del monto de la opción en el cálculo del arancel. Para lograrlo, la Opinión plantea dos soluciones para dos escenarios distintos.

En el primer escenario se parte de la premisa de que la escritura de arrendamiento no requiere el otorgamiento de una escritura pública para el ejercicio de la opción de prórroga. En este escenario, la Opinión determina que el monto de la opción debe incluirse en el cálculo de aranceles notariales que debe cancelarse a pesar de que sea incierto.

En el segundo escenario se plantea que la escritura de arrendamiento requiere el otorgamiento de una escritura pública posterior para el ejercicio de la opción. En este escenario, se determina que los aranceles notariales sobre el monto de la opción de prórroga se cancelarán una vez se otorgue la escritura para su ejercicio. Ambas soluciones presentan interrogantes que no se resuelven con certeza. Veamos.

En primer lugar, no queda claro qué ocurre con el monto de aranceles correspondiente a la opción de prórroga si este se canceló pero la referida opción no se ejerció. La Opinión no ofrece una respuesta. En su lugar, parecería avalar la cancelación de aranceles sobre cantidades de dinero sin proveer un método para su devolución de no ejercerse la opción. Además, algunos de los contratos de arrendamiento objeto de análisis comprenden décadas por lo que a la hora de ejercer la opción el valor de los aranceles puede haber aumentado. Requerir que se cancelen los aranceles notariales sobre la opción de prórroga al momento en que se otorgue la escritura de arrendamiento tendrá el efecto de que se subcalcule el valor de los aranceles.

En segundo lugar, no se detallan las cláusulas objeto de análisis. Esta omisión impide realizar un ejercicio juicioso del lenguaje que regirá en cualquiera de los dos escenarios antes descritos en ocasiones futuras.

En tercer lugar, la Opinión parece pasar por alto la naturaleza unilateral de la opción de prórroga. Es decir, la naturaleza de la opción de prórroga no se ve alterada por la formalidad que se pacte para su ejercicio. Esto tiene el efecto de desvirtuar uno de los

principios definitorios de la opción: que su ejercicio queda únicamente en las manos del optante. La Opinión no toma esto en consideración al disponer de la controversia.

Debido a que la determinación de la mayoría valida un curso de acción que no atiende en su totalidad las interrogantes medulares que surgen de los hechos que motivan nuestra intervención en este caso, disiento respetuosamente".

El Juez Asociado señor Martínez Torres disiente con Opinión escrita, a la cual se une el Juez Asociado señor Feliberti Cintrón.


                              Javier O. Sepúlveda Rodríguez
                              Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Carlos G. Chaves Torres

TS-13,924

Opinión disidente emitida por el Juez Asociado señor MARTÍNEZ TORRES a la que se unió el Juez Asociado señor FELIBERTI CINTRÓN.

En San Juan, Puerto Rico, a 27 de marzo de 2025.

Amparados en un razonamiento que se contrapone a los principios más básicos de nuestro ordenamiento contractual, el Tribunal concluye que el cómputo de los derechos arancelarios que devenga una escritura pública de arrendamiento con opción de prórroga debe incluir todos los plazos de extensión contemplados en una cláusula suspensiva de opción, aunque no se tenga certeza sobre su ejercicio.

En estricto derecho, el dictamen omite que una opción de prórroga sujeta al arbitrio del arrendatario no cobra eficacia desde que se pacta, sino desde que el optante ejerce su prerrogativa. Propiamente, nos encontramos ante una obligación condicional de

carácter suspensivo que, por su naturaleza, no nace en defecto de la condición. Sin embargo, sin proveer mayor fundamento, la Opinión anuncia que los otorgantes deben pagar arancel por los periodos de prórroga no perfeccionados, salvo que en la escritura de arrendamiento se haya pactado la formalidad de ratificar el ejercicio de la opción mediante instrumento público. En ese caso, no se tendría que pagar aranceles por la potencial prórroga en el instrumento inicial, sino al ratificar el ejercicio de la opción. Por extensión lógica, si el optante rehúsa prorrogar el negocio, no pagará aranceles por el periodo de extensión que no se perfeccionó. En cambio, los otorgantes que no hayan convenido solemnidad particular para optar siempre tendrán que pagar aranceles por las posibles prórrogas, aunque nunca entren en vigor.

Al proceder de esta forma, el Tribunal parece intimar que el carácter suspensivo de la obligación condicional proviene, no de la incertidumbre sobre el ejercicio de la opción, sino del requisito de forma convenido para materializarla. No estoy de acuerdo. Tanto la opción de prórroga que requiere de una escritura pública para su ejercicio como la que no exige formalidad legal alguna comparten la misma —y principal— condición suspensiva; a saber, la discreción del optante para reclamar su derecho.

Las disposiciones tributarias que rigen el cálculo de los aranceles notariales **derivan la cuantía de los instrumentos públicos** en función del valor atribuible al negocio jurídico que en ellos se formaliza. En las escrituras de arrendamiento que motivaron el caso de autos, las cláusulas

de opción de prórroga partían de una formulación suspensiva. Por eso, las únicas obligaciones vigentes al otorgarse el documento lo eran el convenio de arrendamiento por el término inicial y el derecho de opción concedido al arrendatario. Mientras la prórroga del arrendamiento esté en suspenso, me parece incorrecto cobrar derechos arancelarios por un negocio que no se ha perfeccionado.

En ausencia de una disposición vinculante que regulara el asunto de forma puntual, debíamos ceñirnos a las normas generales del Derecho de Obligaciones y Contratos. No le corresponde al Tribunal legislar en este tema.

Dicho esto, y en vista de que la Opinión mayoritaria recoge de forma detallada los hechos del caso, procedo a exponer los fundamentos de derecho que cimientan mi disenso.

I

### A. *La Ley Notarial de Puerto Rico*

La Ley Núm. 75 de 2 de julio de 1987, según enmendada, conocida como la Ley Notarial de Puerto Rico, (Ley Notarial) 4 LPRA sec. 2001 *et seq.*, establece los parámetros para el ejercicio de la notaría en nuestra jurisdicción. En ella se reconoce el rol de este Tribunal Supremo como ente fiscalizador del notariado. Arts. 3 y 62 de la Ley Notarial, 4 LPRA secs. 2003, 2102. La ejecución de esa encomienda se instrumentaliza mediante el brazo operativo de la Oficina de Inspección de Notarias (ODIN). Íd.

Investida de poder para auxiliar al Tribunal en la supervisión del notariado, la ODIN, entre otras cosas, está designada para inspeccionar las obras protocolares

custodiadas por los notarios. Véase, Art. 62 de la Ley Notarial, 4 LPRA sec. 2102. No obstante, en esa faena, la autoridad de la ODIN no es irrestricta ni supone que sus Inspectores de Protocolo pueden pasar juicio sobre todas las determinaciones del notario. Sobre ese extremo, hemos señalado que

> [l]a inspección del protocolo se ciñe fundamentalmente a la forma y manera en que lo lleva el notario; y si bien la ley instruye al Inspector constatar la observancia por el notario de las disposiciones de la Ley Notarial 'o de cualquier otra ley de Puerto Rico' incluyendo las de arancel, **su intervención en este amplio campo es de prudente iniciativa, sin adentrarse en el área de derecho substantivo, y menos aún asumir función interpretativa o declarativa del Derecho.** (Negrillas suplidas). Rivera Miranda v. Betancourt, 111 DPR 147, 149-150 (1981).

Bajo ese mismo razonamiento, hemos apuntalado que el proceso de inspección de la ODIN debe circunscribirse esencialmente a pasar juicio sobre las formalidades de los instrumentos públicos evaluados. In re García Cabrera, 188 DPR 196, 213 (2013). En esa vertiente, el inspector "comprobará si se ha dado cumplimiento a las normas **vigentes** que rigen el desempeño de la función notarial e indicará las anomalías observadas". (Negrilla suplida). Regla 77(g), del Reglamento Notarial de Puerto Rico, (Reglamento Notarial) 4 LPRA Ap. XXIV. No obstante, la evaluación del contenido, los aspectos sustantivos y la interpretación de los documentos públicos le corresponde al propio notario, al Registrador de la Propiedad y a los tribunales. In re García Cabrera, supra, pág. 214.

Conviene puntualizar que la Regla 76 del Reglamento Notarial permite que la ODIN emita instrucciones generales encaminadas a orientar y guiar el ejercicio adecuado de la función notarial. Íd., 4 LPRA Ap. XXIV. No obstante, surge de la propia regla que "[l]as instrucciones estarán subordinadas a las leyes, los reglamentos y la jurisprudencia aplicables. **En ningún caso las instrucciones servirán de fundamento para un señalamiento de falta de un inspector. La instrucción no puede considerarse una fuente de derecho vinculante".** (Negrilla suplida). Íd.

En lo que a esta controversia se refiere, la facultad fiscalizadora de ODIN se extiende a evaluar el cumplimiento del notario con los preceptos que rigen la cancelación de derechos arancelarios. A esos efectos, el Art. 10 de la Ley Notarial dispone que el notario tiene el deber de adherir y cancelar en cada escritura original que otorgue, y en las copias certificadas que se expidan del instrumento, los sellos correspondientes de Rentas Internas y del Colegio de Abogados de Puerto Rico. Íd., 4 LPRA sec. 2021. Esta obligación es coetánea al momento de otorgar un documento público. In re González Maldonado, 152 DPR 871, 919 (2000); In re Merino Quiñones, 115 DPR 812, 813-814 (1984).

Omitir la cancelación de derechos arancelarios constituye una falta grave que expone al notario no solo a sanciones disciplinarias severas sino a consecuencias penales, incluyendo la imputación del delito de apropiación ilegal. Íd. "Al mismo tiempo, es importante subrayar que la omisión de adherir y cancelar los sellos correspondientes deja

en entredicho la validez de los instrumentos —incluso, la de las copias certificadas— ya que éstos son anulables hasta que dichos sellos sean adheridos y cancelados". In re González Maldonado, supra, pág. 919. Véase, además, Art. 10 de la Ley Notarial, supra.

Este requisito tributario es de tal importancia que en su momento expresamos que "[u]n notario que deja de adherir sellos por una cantidad mayor a la fianza notarial, constituye una amenaza —para el tráfico jurídico de los bienes inmuebles así como para los que habitualmente utilizan sus servicios— al igual que aquel notario que no haya prestado tal fianza". In re González Maldonado, supra, pág. 919.

**B. *Disposiciones sobre el cómputo de aranceles en instrumentos públicos***

Las normas atinentes al pago de aranceles notariales sobre documentos públicos provienen de la Ley Núm. 101 de 12 de mayo de 1943, según enmendada, conocida como la Ley de Arancel Notarial, 4 LPRA sec. 851 *et seq.* Al analizar su naturaleza hemos expresado que se trata de una ley tributaria. Inspector de Protocolos v. Dubón, 107 DPR 50, 61 (1978). El texto estatutario expresa que los instrumentos públicos cancelarán sellos de rentas internas en función de la cuantía del negocio jurídico allí consignado. Sec. 2 de la Ley de Arancel Notarial, 4 LPRA sec. 281. Específicamente, la ley provee una escala de valores que delimita el cómputo de derechos arancelarios con arreglo a la categoría en la que ubique la cuantía del documento público. Íd.

Con lo anterior en mente, cabe destacar que la Instrucción General #15 de la ODIN sobre *Cancelación de aranceles en la obra notarial; función del Inspector o Inspectora de Protocolos y Notarías respecto al cumplimiento de este deber,* en su inciso (C) (4-5) explica que el cálculo de los aranceles notariales en escrituras de arrendamiento se realizará de la manera siguiente:

> Arrendamiento: el canon mensual o anual multiplicado por el número de meses o años, **incluyendo las prórrogas, si las hubiese, cuando el canon de estas se ha pactado.** Artículos 1432, 1433 y 1066 del Código Civil de Puerto Rico, 31 LPRA secs. 4011, 4012 y 3041; Resolución de 23 de junio de 1975 emitida por el Tribunal Superior, Sala de San Juan, en el caso José R. Seda v. Gabriel Hernández Rivera, Civil Núm. 74-2848, sobre Divergencia de Criterio.
>
> **Arrendamiento con prórrogas y con cláusula que exige la ratificación de cada prórroga en escritura pública o el otorgamiento de escritura pública para que estas entren en vigor: la escritura pública posterior se considerará un documento sin cuantía.**

Es precisamente el contenido de la instrucción y la interpretación que en ella se enuncia, una de las razones principales de la divergencia de criterio que nos ocupa. En tanto las instrucciones de ODIN no pueden ser fundamento para un señalamiento de falta, era necesario determinar si el contenido era respaldado por una fuente vinculante.

II

*A. Sobre las obligaciones condicionales*

Según el Código Civil de 1930, aplicable a los hechos del caso, las obligaciones nacen de la ley, de los contratos o cuasicontratos, y de las acciones u omisiones ilícitas en las que medie algún grado de culpa o negligencia. Art 1042

del Código Civil de 1930, 31 LPRA ant. sec. 2992. Asimismo, son exigibles desde luego las obligaciones cuyo cumplimiento no depende de algún suceso futuro o incierto, o de un suceso pasado ignorado por los interesados. Art. 1066 del Código Civil de 1930, 31 LPRA ant. sec. 3041. Cuando la eficacia de una obligación está supeditada a la ocurrencia de algún suceso sobre el cual no se tiene certeza, nos encontramos ante una obligación condicional suspensiva. Jarra Corp. v. Axxis Corp., 155 DPR 764, 773 (2001). La característica distintiva del elemento de suspensividad radica en que la obligación únicamente cobra eficacia si se cumple el acontecimiento objeto de la condición. López v. González, 163 DPR 275, 283 (2004). Si, por el contrario, la condición no se materializa, el vínculo jurídico no llega a formalizarse. Íd.

En otro extremo se encuentran las obligaciones condicionales resolutorias. A diferencia de la condición suspensiva, la obligación que surge de una condición resolutoria produce efecto desde que se pacta y se extingue una vez se cumple la condición. López v. González, supra, pág. 283. Desde el preciso momento en que se acuerda, "la obligación existe en su integridad como si la condición no se hubiera pactado". Atocha Thom McAn, Inc. v. Registrador, 123 DPR 571, 579 (1989).

En síntesis, las obligaciones condicionales, bien sean resolutorias o suspensivas, comparten el elemento de incertidumbre en cuanto a si se materializará la condición. Jarra Corp. v. Axxis Corp., supra, pág. 773. Existe sin embargo una diferencia fundamental en los efectos que el

cumplimiento de la condición produce en cada tipo de obligación; para una de ellas el acontecimiento supone el inicio del vínculo jurídico mientras que, en la otra, conlleva su extinción. Íd.

### B. La opción de prórroga en el contrato de arrendamiento

Jurisprudencialmente, definimos el contrato de opción como el "convenio por el cual una parte [llamada concedente, promitente u optatario] concede a la otra [llamada optante], por tiempo fijo y en determinadas condiciones, la facultad, que se deja exclusivamente a su arbitrio, de decidir respecto a la celebración de un contrato principal". Atocha Thom McAn, Inc. v. Registrador, supra, pág. 584. En sus orígenes el convenio de opción era visto únicamente como predecesor del contrato de compraventa; actualmente se avala utilizar la opción como antesala a la mayoría de los contratos. Íd.

No son muchas las ocasiones en las que este Tribunal ha tenido la oportunidad de examinar la figura de la opción de prórroga como pacto accesorio a un contrato de arrendamiento. Hace sesenta y nueve años en Igartúa v. Ruiz, 79 DPR 481 (1956), indicamos que la prórroga de un contrato de arrendamiento forma parte del convenio en cuestión. Íd., pág. 486. Sin embargo, reconocimos que "el contrato de opción es un contrato unilateral, que puede ejercitarse por la sola voluntad del optante". Íd. Asimismo, en Atocha Thom McAn, Inc. v. Registrador, supra, distinguimos el contrato de prórrogas del contrato de opción y explicamos:

> La diferencia estriba en que mientras en el contrato de prórrogas su continuación es un hecho cierto —pues ya hay acuerdo de voluntades— en el

de opción el arrendamiento está sujeto a una condición incierta: el ejercicio del derecho por parte del optante. En puridad jurídica no puede, pues, hablarse de un contrato de prórrogas de arrendamiento si existe incertidumbre sobre su existencia. Íd., pág. 585.

En otra ocasión dijimos que la opción de renovar "se refiere a la facultad que se le confiere a uno de los contratantes para que, a su arbitrio, decida sobre la renovación o extensión de un contrato ya vigente entre las partes". Mayagüez Hilton Corp. v. Betancourt, 156 DPR 234, 247 (2002).

III

La controversia que se nos planteó en este caso precisaba armonizar las normas generales sobre obligaciones y contratos con las exigencias tributarias atadas a la práctica notarial. En el contexto de los instrumentos públicos, el cómputo de los derechos arancelarios tributables dimana del valor del negocio jurídico otorgado. Así pues, entiendo que nuestro rol interpretativo se circunscribía a evaluar si una obligación que no ha cobrado vigencia, por estar sujeta a una condición suspensiva, es computable al monto arancelario derivable del negocio jurídico perfeccionado en el documento público. Mi criterio es que **no**.

El cálculo de la cuantía del negocio jurídico no puede tomar en cuenta una obligación que no nace al otorgarse el documento público del que se trate. Ese es exactamente el caso de las escrituras de arrendamiento en las que se pacta una cláusula suspensiva de opción de prórroga. La obligación de prorrogar el arrendamiento no surge desde el momento en que

se otorga el instrumento en el que se concede la opción, pues la eficacia de la prórroga queda al arbitrio del arrendatario. Solamente si el optante decidiera ejercer su derecho a prorrogar surgiría el concurso de voluntades indispensable para perfeccionar esa obligación.

No obstante, la determinación mayoritaria, en lugar de seguir los lineamientos estatutarios para determinar la existencia y extensión de una obligación arancelaria, se desvió y optó por imponer unos nuevos parámetros tributarios. De ahora en adelante, si en la escritura de arrendamiento se pactó la formalidad de ratificar el ejercicio de la opción mediante instrumento público, no se tendrán que pagar aranceles en el instrumento inicial por la potencial prórroga, sino al ejercitar la opción. Por el contrario, quienes no hayan convenido solemnidad alguna para optar, tendrán que pagar aranceles por las prórrogas contempladas en la opción, aunque estas nunca lleguen a ocurrir. Como consecuencia natural de lo pautado, los otorgantes que acuerden la formalidad escrita para materializar la opción y luego decidan no prorrogar, no habrán pagado aranceles por el periodo de extensión que no se perfeccionó. En un mismo escenario, quienes no hayan convenido la formalidad escrita habrán pagado aranceles por una prórroga que no llegó a existir. Sobre este punto, recordemos que en Puerto Rico no existe mecanismo formal alguno para que un otorgante de negocio jurídico reciba un reembolso por aranceles notariales pagados en exceso.

La dicotomía que avala la Opinión no se ajusta a los linderos estatutarios que rigen el cálculo de aranceles

notariales. Y es que, entiendo que si los periodos de prórroga no perfeccionados fueran parte de la cuantía de la escritura de arrendamiento, como indirectamente sugiere la Opinión del Tribunal, entonces procedería cobrarse el arancel en su integridad al otorgarse esa escritura. No sería propio cobrarlo en la escritura en la que se ejerce la prórroga. De lo contrario, algunos otorgantes terminarían tributando un monto menor al valor del negocio. Debemos ser muy cautelosos con esto, pues en ese caso podríamos estar instaurando, *sub judice*, una exención arancelaria. Por eso, la Instrucción Núm. 15 de ODIN, supra, indica que las posibles prórrogas de un arrendamiento cancelan aranceles al otorgarse la escritura inicial, independientemente de si se pacta el requisito de ratificarlas mediante otro instrumento. Aunque considero que la instrucción es incorrecta, pues cuantifica negocios no perfeccionados, al menos provee una respuesta uniforme.

Insisto en que lo único que puede alterar el computo arancelario en estos casos es la naturaleza suspensiva o resolutoria de la condición a la que está supeditada el ejercicio de la opción, y no la formalidad requerida para ratificar su ejercicio. En esa línea, la opción de prórroga cuya vigencia queda al arbitrio de una manifestación de voluntad futura por parte del arrendatario, no puede entenderse perfeccionada desde que se otorga. Consecuentemente, estimo que en una escritura de arrendamiento con opción de prórroga, necesariamente la duración del arrendamiento —tributable— tiene que ser la que se puede entender perfeccionada y vigente al momento del convenio.

**La formalidad pactada para el ejercicio de la condición no altera la naturaleza incierta de su perfeccionamiento.** Independientemente del acuerdo que se requiera para ratificar la voluntad de extender el contrato, la verdadera naturaleza suspensiva de la obligación proviene de la incertidumbre sobre el ejercicio de la opción de prórroga. La exigencia de concretar la potestad de prorrogar mediante escritura pública es, a lo sumo, una segunda condición suspensiva accesoria a la discreción del arrendatario de ejercer la opción.

Claramente, si la cláusula de opción es resolutoria, o sea, si se pacta que un arrendamiento se entenderá prorrogado salvo que el arrendador indique lo contrario, la duración del negocio otorgado en la escritura incluye el periodo contemplado en la prórroga. Esto es así, porque como bien discutimos anteriormente, las obligaciones condicionales resolutorias se perfeccionan desde que se pactan. A diferencia de la condición suspensiva, en la que el perfeccionamiento de la obligación —en este caso la extensión del arrendamiento— queda al arbitrio de una de las partes, la prórroga de arrendamiento pactada mediante una cláusula resolutoria de opción se perfecciona desde el mismo momento en que se suscribe el contrato de arrendamiento. Esto es plenamente justificable porque en las obligaciones condicionales resolutorias lo que está en suspenso no es el nacimiento de la obligación, sino su extinción. Es decir, en esas circunstancias el cumplimiento de la condición resolutoria; a saber, la manifestación del arrendador sobre su oposición a

la prórroga del contrato conlleva la culminación del arrendamiento.

Ese es a mi entender el único razonamiento en derecho que puede alterar, en casos como el de autos, la forma de computar el arancel de un instrumento público de arrendamiento. De modo que estoy de acuerdo con la Opinión Mayoritaria en cuanto a lo que concluye sobre las cláusulas resolutorias de opción de prórroga. Procede en esos casos calcular la duración del arrendamiento a base de todos los periodos de extensión pactados. Ahora bien, hay que tener presente que las escrituras de arrendamiento autorizadas por el licenciado Chaves Torres contenían cláusulas suspensivas de opción de prórroga y no cláusulas resolutorias. Por eso, entiendo que ODIN se equivocó al señalarle deficiencias por no haber adherido y cancelado sellos por los plazos de prórroga no perfeccionados.

IV

Finalmente, debo recalcar que al interpretar el derecho, nuestras conclusiones no pueden basarse en fundamentos de política pública que no le corresponden a esta Rama. Si la Asamblea Legislativa entiende que el cálculo de los derechos arancelarios aquí en disputa debe realizarse de otra manera, bien puede así preceptuarlo mediante ley. No obstante, me sostengo en que, ante la ausencia de una disposición vinculante que atendiera puntualmente la controversia, el ejercicio prudente de nuestro rol interpretativo debía ceñirse a la aplicación de las normas generales de nuestro ordenamiento civil. Por eso, me inclino hacia la no imposición

de arancel a los periodos de extensión **inciertos**. Pesa en mi criterio que nos encontramos ante un asunto de naturaleza tributaria. El ejercicio de hermenéutica en estatutos de esta naturaleza nos obliga a interpretar su vaguedad o ambigüedad restrictivamente en contra del Estado. Recordemos que "[e]n la interpretación de estatutos que imponen contribuciones, es la práctica establecida no extender sus disposiciones, por implicación, más allá del claro alcance del lenguaje usado, o ampliar su radio de manera que comprenda materias que no han sido específicamente señaladas". Yiyi Motors, Inc. v. E.L.A., 177 DPR 230 (2009), citando a: Gould v. Gould, 245 U.S. 151, 153 (1917).

V

La exigencia de cancelar aranceles notariales en una escritura pública de arrendamiento no debe extenderse a los periodos contemplados en una opción de prórroga supeditada a una condición suspensiva. Como ese no fue el criterio mayoritario, disiento respetuosamente.


RAFAEL L. MARTÍNEZ TORRES
Juez Asociado