ESTADO LIBRE ASOCIADO DE PUERTO RICO
EN EL TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| IVETTE R. GARCÍA CRUZ<br><br>Apelante<br><br>v.<br><br>OFICINA DE INSPECCIÓN DE NOTARÍAS, REPRESENTADA POR LCDO. MANUEL ÁVILA DE JESÚS, DIRECTOR; LCDA. SHARON REYES RODRÍGUEZ, INSPECTORA<br><br>Apelada | **TA2025AP00121** | *Apelación* procedente del Tribunal de Primera Instancia Sala Superior de San Juan<br><br>Civil Núm. SJ2024CV10601<br><br>Sobre: Sentencia Declaratoria |

Panel integrado por su presidente, el Juez Hernández Sánchez, el Juez Bonilla Ortiz y la Jueza Mateu Meléndez.

Bonilla Ortiz, Juez Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 8 de septiembre de 2025.

Comparece ante este foro la Sra. Ivette R. García Cruz (señora García o "la apelante") y nos solicita que revisemos una *Sentencia* emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan, notificada el 12 de junio de 2025. Mediante el referido dictamen, el foro primario declaró *Ha Lugar* la moción de desestimación presentada por el Gobierno de Puerto Rico, en representación de la Oficina de Inspección de Notarias, su director el Lcdo. Manuel Ávila de Jesús y la inspectora de protocolos, la Lcda. Sharon Reyes Rodríguez (ODIN o "parte apelada"), por consiguiente, desestimó la *Demanda* instada por la apelante.

Por los fundamentos que expondremos a continuación **CONFIRMAMOS** la *Sentencia* apelada.

**I.**

El 15 de noviembre de 2024, la señora García presentó una *Demanda* sobre *Sentencia Declaratoria* en contra de la Oficina de Inspección de Notarias, su director el Lcdo. Manuel Ávila de Jesús y la inspectora de protocolos, la Lcda. Sharon Reyes Rodríguez.[1] En esencia, alegó que había divergencias de criterio entre la Inspectora y la apelante, en relación con la inspección de su obra notarial. Señaló, que las alegadas faltas notificadas por la Inspectora cumplían con los requisitos exigidos por Ley. Por ello, solicitó que dichas escrituras fueran declaradas realizadas conforme a derecho y no necesitaban ser ratificadas ni subsanadas.

No obstante, el 22 de enero de 2025, la ODIN presentó una *Moción de Desestimación*.[2] En esta, solicitó la desestimación de la *Demanda* toda vez que no constituía una causa de acción que justificara la concesión de un remedio, debido a que:

> (a) fue al inspector de protocolos, sujeto a las instrucciones del Director de la ODIN, a quien se le confirió expresamente la capacidad jurídica para iniciar un procedimiento para dilucidar divergencias de criterio ante el Tribunal de Primera Instancia; y (b) la presente controversia no es justiciable ya que la parte demandante no posee la legitimación activa que se le requiere para comparecer como litigante ante este tribunal y obtener una sentencia vinculante que resuelva las divergencias de criterios relacionadas a su obra notarial.

Por ello, reiteró que aun cuando se tomaran como ciertos los hechos bien alegados y fueran considerados de la manera más favorable a la apelante, no surgía de

---

[1] *Demanda*, entrada núm. 1 en el Sistema Unificado de Manejo y Administración de Casos (SUMAC).
[2] *Moción de Desestimación*, entrada núm. 7 en SUMAC.

la *Demanda* una controversia justiciable que justificara la concesión de un remedio.

El 27 de febrero de 2025, la señora García presentó su *Oposición a Moción de Desestimación*.[3] Mediante la cual, sostuvo que tenía legitimación activa para instar la causa de acción. Razonó que, "si los Notarios no tuviesen legitimación activa para elevar reclamos sobre divergencia de criterio ante los tribunales, estarían huérfanos de la protección dada por las garantías constitucionales del debido proceso de ley e igual protección de las leyes." Asimismo, dispuso que según el Artículo 63 de la Ley Notarial, el cual ordena que las divergencias de criterio entre el Inspector y el Notario se diluciden ante el Tribunal Superior. Por lo que, al ser una controversia entre la Inspectora de ODIN y la apelante, no procedía la desestimación del caso, dado que la Ley concede legitimación a ambas partes para comparecer ante el foro primario.

Evaluadas las mociones, el 12 de junio de 2025, el foro *a quo* notificó la *Sentencia* apelada, en la cual declaró *Ha Lugar* la moción de desestimación presentada por ODIN, por consiguiente, desestimó la *Demanda* instada por la apelante.[4] Concluyó que, la Ley Notarial y su Reglamento, le confiere capacidad jurídica al Director de la ODIN, o a su inspector según instruido por este para entablar un procedimiento de divergencias de criterios en el foro primario. Por lo tanto, determinó que la apelante no tenía legitimación activa para instar el pleito, y desestimó con perjuicio.

---

[3] *Oposición a Moción de Desestimación*, entrada núm. 10 en SUMAC.
[4] *Sentencia*, entrada núm. 13 en SUMAC.

Inconforme, el 14 de julio de 2025, la señora García presentó el recurso que nos ocupa y formuló el siguiente error:

> El Tribunal de Primera Instancia erró al dictar sentencia declarando que la demandante no tiene legitimación activa para instar la demanda de Sentencia Declaratoria.

El 16 de julio de 2025, emitimos una *Resolución* concediéndole a la parte apelada el término dispuesto en el Reglamento de este Tribunal para que presentara su alegato.

Luego de una solicitud de prórroga, el 18 de agosto de 2025, la ODIN presentó su *Alegato de la Parte Apelada*.

Con el beneficio de la comparecencia de ambas partes, procedemos a disponer del asunto ante nuestra consideración.

**II.**

**-A-**

La Regla 10 de Procedimiento Civil, 32 LPRA Ap. V, permite a una parte demandada presentar tres (3) clases de mociones antes de contestar la demanda: (1) moción de desestimación; (2) moción para solicitar una exposición más definida; y (3) moción eliminatoria. 32 LPRA Ap. V, R.10.2, 10.4 y 10.5 de Procedimiento Civil. La notificación de alguna de estas mociones interrumpe y altera el término para presentar la alegación responsiva. 32 LPRA Ap. V, R. 10.1. Véase, además: *Conde Cruz v. Resto Rodríguez*, 205 DPR 1043,1065 (2020). No obstante, en aras de evitar dilaciones innecesarias, la parte que presente una moción al amparo de la regla deberá acumular en esta todas las mociones y defensas a las que entienda que tiene derecho y que la regla contempla. 32 LPRA Ap. V, R. 10.7.

Por su parte, la Regla 10.2 de las de Procedimiento Civil, *supra*, permite que una parte demandada solicite la desestimación de una causa de acción presentada en su contra si resulta evidente que de las alegaciones de la demanda prosperará alguna de las defensas afirmativas que establece la misma regla. Esta moción se basará en al menos uno de los siguientes fundamentos: (1) la falta de jurisdicción sobre la materia o (2) la falta de jurisdicción sobre la persona, (3) insuficiencia del emplazamiento (4) insuficiencia del emplazamiento del diligenciamiento; (5) dejar de exponer una reclamación que justifique la concesión de un remedio, o (6) dejar de acumular una parte indispensable. 32 LPRA Ap. V, R. 10.2(5). La parte que presente dicha moción de desestimación deberá acumular todas las defensas que la regla permite o, de no hacerlo, se entenderán renunciadas, con excepción a la defensa de jurisdicción sobre la materia o las contempladas en la Regla 10.8 de Procedimiento Civil. 32 LPRA Ap. V, R. 10.7-10.8. Véase, además: *Conde Cruz v. Resto Rodríguez*, supra, pág. 1066.

De ordinario, al considerarse una moción de desestimación al amparo de esta regla, los tribunales tienen que tomar como cierto y de la forma más favorable para la parte demandante todos los hechos bien alegados en la demanda y que hayan sido aseverados de manera clara y concluyente. *Eagle Security Police, Inc. v. Dorado,* 211 DPR 70, 84 (2023); *Cobra Acquisitions, LLC v. Municipio de Yabucoa*, supra, pág. 396. Cónsono con lo anterior, los foros adjudicativos tienen el deber de interpretar las alegaciones de una demanda de manera conjunta y liberalmente a favor de la parte demandante para facilitar el amparo judicial. *Eagle Security*

*Police, Inc. v. Dorado,* supra, pág. 84; *González Méndez v. Acción Social et al.,* 196 DPR 213, 234 (2016).

Para que prevalezca una solicitud de desestimación al amparo de la Regla 10.2, *supra*, el tribunal debe convencerse con certeza que el demandante no tiene derecho a remedio alguno bajo cualquier estado de derecho que se pudiere probar en apoyo a su reclamación, aun interpretando la demanda lo más liberalmente a su favor. *Rivera Sanfeliz et al. V. Jta. Dir. Firstbank*, 193 DPR 38, 49 (2015). Así pues, los foros judiciales deben ponderar si, a la luz de la situación más favorable al demandante y resolviendo toda duda a su favor, la demanda es suficiente para establecer una reclamación válida. *Eagle Security Police, Inc. v. Dorado*, supra, pág. 84. Asimismo, el Tribunal Supremo de Puerto Rico resolvió que el estándar de revisión de la moción de desestimación se extiende a la solicitud de remedios alternativos. *Comisión v. González Freyre*, 211 DPR 579,614-615 (2023).

-B-

Como doctrina de autolimitación y de prudencia en el ejercicio del Poder Judicial, los tribunales solo pueden resolver aquellas controversias que sean justiciables. *Hernández Montañez v. Parés Alicea*, 208 DPR 727, 738 (2022). El concepto de justiciabilidad "impone el deber de examinar si los casos que traban una controversia de índole constitucional cumplen con determinados e indispensables requisitos previo a una expresión." *Noriega v. Hernández Colón*, 135 DPR 406, 420 (1994). Lo anterior, pues, "los tribunales existen únicamente para resolver controversias genuinas surgidas entre partes opuestas que tienen un interés real en

obtener un remedio que haya de afectar sus relaciones jurídicas." *ELA v. Aguayo*, 80 DPR 552, 558-559 (1958). Por consiguiente, para poder ejercer de forma válida nuestra facultad de interpretar la ley, es necesario que el caso presente una controversia auténtica, definida y concreta, dentro de un contexto adversativo. De lo contrario, procede la desestimación del recurso presentado porque, como no existe una controversia real entre los litigantes, el tribunal debe abstenerse de adjudicarlo.

El Tribunal Supremo de Puerto Rico ha resuelto que una controversia no es justiciable en las siguientes circunstancias, a saber: (1) cuando la cuestión a resolver es una cuestión política; (2) cuando el pleito no está maduro; (3) cuando, después de iniciado el pleito, hechos posteriores lo convierten en académico; (4) cuando lo que se procura obtener es una opinión consultiva; y (5) cuando las partes no poseen legitimación activa para incoar la acción presentada. *Noriega v. Hernández Colón*, supra, pág. 421.

Nuestra jurisprudencia define la legitimación activa como "la capacidad que se requiere a la parte promovente de una acción para comparecer como litigante ante el tribunal, realizar con eficiencia actos procesales y, de esta forma, obtener una sentencia vinculante." *Hernández, Santa v. Srio. De Hacienda*, 208 DPR 727, 739 (2022). Para satisfacer dicho concepto, la parte promovente tiene que demostrar: (1) que sufrió un daño claro y palpable; (2) que el daño es real, inmediato y preciso, no abstracto o hipotético; (3) la existencia de un nexo causal entre el daño y la acción que se ejercita; y, (4) que la causa de acción se ejerce al

palio de la Constitución o de una ley. *Fund. Surfrider y otros v. ARPe,* 178 DPR 563, 572 (2010).

Se ha indicado que la legitimación activa significa que, como parte demandante, debe figurar aquella persona a favor de quien el derecho sustantivo establece el derecho objeto de la demanda. R. Hernández Colón, *Práctica Jurídica de Puerto Rico, Derecho Procesal Civil,* 5ta ed., Lexis Nexis de Puerto Rico, 2010, sec.1002, pág. 106.

Así, el requisito de legitimación activa tiene su génesis en la doctrina de justiciabilidad y su función principal responde a asegurar que los tribunales atiendan aquellos asuntos que presentan casos o controversias que les permitan conceder remedios apropiados. *CRIM v. Méndez Torres*, 174 DPR 216, 225 (2008). "La doctrina de la justiciabilidad de las causas gobierna el ejercicio de la función revisora de los tribunales, fijando la jurisdicción de los mismos." *Smyth, Puig v. Oriental Bank,* 170 DPR 73, 75 (2007).

En armonía con lo que antecede, la jurisdicción es el poder o autoridad que ostenta un tribunal para resolver los casos y las controversias que tiene ante sí. *Pueblo v. Ríos Nieves*, 209 DPR 264, 273 (2022). Reiteradamente, se ha expresado que los tribunales debemos ser celosos guardianes de nuestra jurisdicción y no tenemos discreción para asumir jurisdicción donde no la hay. *Íd.* De igual manera, es conocido que la ausencia de jurisdicción no puede ser subsanada por las partes. *Pueblo v. Ríos Nieves,* supra, pág. 274; *Pérez Soto v. Cantera Pérez, Inc., et al.,* 188 DPR 98, 105 (2013). Por consiguiente, las cuestiones relacionadas a la jurisdicción de un tribunal son privilegiadas y

deben atenderse y resolverse con preferencia a cualquier otra. Cuando un tribunal emite una sentencia sin tener jurisdicción sobre las partes o la materia, su dictamen es uno inexistente o *ultravires*. *Íd*. pág. 105. Por ello, al carecer de jurisdicción o autoridad para considerar un recurso, solo resta declararlo así y desestimar la reclamación sin entrar en los méritos de la controversia. *Íd*.

-C-

La función notarial está regida por las disposiciones de la *Ley Notarial de Puerto Rico*, Ley Núm. 75 de 2 de julio de 1987, según enmendada, 4 LPRA sec. 2001 *et seq*. (Ley Notarial), del *Reglamento Notarial de Puerto Rico,* 4 LPRA Ap. XXIV (Reglamento Notarial), y del *Código de Ética Profesional*, 4 LPRA Ap. IX (Código de Ética). Véase, además: *In re Chaves Torres*, 2025 TSPR 32; *In re Colón Alvarado*, 212 DPR 628, 633 (2023); *In re González Pérez*, 208 DPR 632, 645 (2022); *In re Sánchez Reyes*, 204 DPR 548, 565 (2020). El Artículo 2 de la Ley Notarial, *supra*, consagra el principio de la fe pública notarial. 4 LPRA sec. 2002. Por ello, un documento notarial, el cual está autorizado y autenticado por la dación de fe de un notario, se presume que cumple con todas las formalidades de ley. *In re Chaves Torres*, supra; *In re Vélez Torres*, 209 DPR 848, 864 (2022); *In re Santiago Maldonado*, 206 DPR 1029, 1041 (2021).

En virtud de lo anterior, es norma firmemente establecida que los notarios deben ejercer sus funciones de manera responsable, competente y diligente. *In re Chaves Torres*, supra; *In re Santiago Maldonado,* supra, pág. 1039; *In re Rafucci Caro,* 206 DPR 589, 605 (2021).

Con el objetivo de velar por el cumplimiento de sus funciones, el Artículo 62 de la Ley Notarial, *supra*, dispone lo siguiente:

> La inspección de Notarías y el examen de los Protocolos estará a cargo del Juez Presidente del Tribunal Supremo de Puerto Rico. El Juez Presidente nombrará un Director de la Oficina de Inspección de Notarías y notarios de experiencia como inspectores, todos los cuales estarán cubiertos por las disposiciones de la Ley Núm. 64 de 31 de mayo de 1973, enmendada, conocida como "Ley de Personal de la Rama Judicial", y de las reglas y reglamentos que se adopten en virtud de la misma. […] El Tribunal Supremo, previa oportunidad al notario de ser oído en su defensa [,] podrá corregirlo disciplinariamente mediante reprimenda, multa que no exceda de quinientos (500) dólares o suspensión temporal o permanente de su cargo en caso de cualquier infracción a las disposiciones de esta ley o de cualquier otra ley relacionada con el ejercicio del notariado, todo ello sujeto a lo dispuesto en el Artículo 65 de esta Ley. Tanto el Tribunal Supremo como el Juez Presidente podrán delegar en el Director de Inspección de Notarías cualesquiera funciones relacionadas con la supervisión de los notarios y el ejercicio del notariado que estimen conveniente, con la excepción de la facultad de imponer sanciones disciplinarias. 4 LPRA sec. 2102.

Nuestro Tribunal Supremo ha mencionado que ante la delicada función del notariado y de las implicaciones legales que conlleva un ejercicio defectuoso y descuidado de éste, la ley notarial y su reglamento delimitan un procedimiento específico para realizar las referidas inspecciones y para dilucidar cualquier controversia que pueda suscitarse en dicho proceso. *In re Godínez Morales,* 161 DPR 219 (2004). Así pues, el Artículo 63 de la Ley Notarial, 4 LPRA sec. 2103, y las Reglas 77 a la 81 del Reglamento Notarial, 4 LPRA Ap. XXIV, secs. 77-81, establecen los criterios que debe seguir el notario, como la ODIN al momento de inspeccionar la obra notarial.

El Artículo 63 de la Ley Notarial, *supra*, dispone lo siguiente:

> Si durante el curso de la inspección del protocolo notarial surgiera cualquier divergencia de criterio entre el Inspector de Protocolos y el Notario, en relación con la forma y la manera de llevar este sus Protocolos y Registros del Testimonios con respecto al cumplimiento de esta ley, la cancelación de derechos o cualquier otra ley relacionada con las formalidades de los instrumentos o documentos, el Inspector deberá hacerlo constar en su informe haciendo una breve exposición de los hechos y de las razones en que se funda la controversia. Dicho informe será remitido a la Sala del Tribunal Superior, sin pago de derechos o impuestos de alguna clase para que oyendo al Inspector y al notario resuelva la controversia. La resolución recaída podrá ser revisada por el Tribunal Supremo mediante recurso de *"certiorari"* interpuesto dentro de los treinta (30) días siguientes a ser notificados, todo ello sujeto a lo dispuesto en el Artículo 65 de esta Ley.

Mientras que, la Regla 77 del *Reglamento Notarial*, *supra*, dispone, entre otras cosas, el proceso de comunicación y coordinación de visitas que deberá desarrollarse entre el notario y el inspector para efectuar la inspección notarial. 4 LPRA Ap. XXIV, R. 77 (a-d). Asimismo, establece que una inspección debe llevarse a cabo en la oficina del notario y que "[u]na vez comenzada una inspección de un Protocolo, será continuada en lo posible, de día a día, hasta tanto sea completada". 4 LPRA Ap. XXIV, R. 77(e). El inspector le dejará diariamente al notario una hoja de trabajo, en la que hará un señalamiento preliminar de aquellas faltas encontradas durante ese día. 4 LPRA Ap. XXIV, R. 77(f)-(g). Por lo tanto, le brinda una oportunidad al notario para que vaya corrigiendo las faltas señaladas durante el curso del procedimiento de inspección.

Una vez finalizado el examen, y el inspector no aprueba el Protocolo o el Registro de Testimonios, pautará una reunión final para determinar si las faltas preliminares señaladas fueron subsanadas y luego discutir con el notario cualquier divergencia de criterio que haya surgido con respecto a la inspección. 4 LPRA Ap. XXIV, R. 77(h)-(i). En caso de determinar que hubo una total subsanación de las faltas, y en ausencia de divergencia de criterio entre el notario y el inspector, este último procederá a aprobar la obra notarial y remitirá un informe final al Director de la ODIN. 4 LPRA Ap. XXIV, R. 77(j). Sin embargo, si luego de celebrada la reunión final subsiste falta o divergencia de criterio, el Inspector remitirá su informe al Director de la ODIN dentro de un término de sesenta (60) días, notificando con copia de éste al notario. 4 LPRA Ap. XXIV, R. 77(k).

Una vez el Inspector somete su informe final ante la consideración del Director de la ODIN, comienza una segunda fase en el proceso de inspección notarial. Al recibir el referido informe, la ODIN se lo notificará al notario, quien tendrá quince (15) días a partir de ese momento para notificar sus objeciones. 4 LPRA Ap. XXIV, R. 79. Luego, y en un término de cuarenta y cinco (45) días desde la fecha del informe final, el Director de la ODIN podrá escoger cualquiera de los siguientes cinco (5) cursos de acción: (a) concederle al notario un término adicional para que subsane las faltas; (b) iniciar o instruir al inspector para que inicie un procedimiento de divergencia de criterio establecido en el Artículo 63 de la Ley Notarial, *supra*, y en la Regla 80 del Reglamento Notarial; (c) decretar el

sobreseimiento, por no justificarse acción posterior alguna; (d) determinar que el notario no ha incurrido en las faltas imputadas y que en tal caso instruirá al inspector para que apruebe la obra notarial; o (e) someterá un informe al Tribunal Supremo junto con cualesquiera escritos que haya recibido del notario para. Regla 79 del Reglamento Notarial, *supra*.

Por otro lado, la Regla 80 del Reglamento Notarial, *supra*, dispone un procedimiento que, sujeto a las instrucciones del Director de la ODIN, el Inspector puede iniciar ante el Tribunal de Primera Instancia en casos en los que exista una o más divergencias de criterio entre el inspector de Protocolos y el notario. Por lo que, para iniciarlo, la regla dispone un término de ciento veinte (120) días contados a partir del momento en que el Director recibe el informe final del Inspector.

Sin embargo, el referido mecanismo es sólo uno más de los cinco (5) cursos de acción mencionamos anteriormente, el Director de la ODIN tiene disponible en ocasión de recibir el informe final del inspector. Asimismo, nuestro Tribunal Supremo en *In re Godínez Morales*, supra, indicó lo siguiente:

> [E]l Director de la ODIN tiene la libertad de escoger cualquiera de los cinco cursos de acción contenidos en la Regla 79 del Reglamento Notarial, *ante*, ello sin que, *de ninguna manera*, esté obligado a optar por uno en específico. A dicho funcionario se le ha conferido amplia discreción para escoger aquel remedio que entienda más conveniente para la situación particular que se le presente. *In re Godínez Morales*, supra.

> […]

> A tono con lo anterior, se ha manifestado que:

> [e]l Director de la ODIN tiene la facultad discrecional de remitir al Tribunal Supremo

su informe negativo sobre la actividad notarial de un abogado Notario o, en la alternativa, de remitirlo al foro judicial para que allí se diluciden las discrepancias entre ambos. *Torres Peralta, op. cit.*, pág. 17.

Asimismo, correctamente se ha señalado que:

[e]l Director de ODIN no está obligado a utilizar el procedimiento judicial ante el Tribunal Superior […] En su lugar, puede recurrir directamente al Tribunal Supremo mediante la remisión de su informe […]. *Íd.*, pág. 17.

### III.

En el caso de autos, la señora García alega que incidió el foro primario al dictar sentencia declarando que no tenía legitimación activa para instar la demanda de *Sentencia Declaratoria*. Sostiene que, la controversia del caso se refiere a una discrepancia jurídica, permitiéndole recurrir al foro primario cuando se vio afectada por una falta señalada por la ODIN, y sea dicho foro quien adjudique la controversia. Añade que, la acción de la ODIN ha causado que su protocolo quedara sin aprobación, invalidando las actas preparadas y obligándola a rehacerlas. Asimismo, que el Director de la ODIN le negó la oportunidad de resolver la controversia ante el Tribunal, por consiguiente, le negó acceso a la justicia, al debido proceso de ley e igual protección de las leyes.

Por su parte, la ODIN esboza que es el Tribunal Supremo de Puerto Rico el ente regulador de la función notarial, quien, a su vez, estableció expresamente que será el Director de la ODIN quien determine si va a requerir al Inspector que someta las divergencias de criterio para la adjudicación por el tribunal de instancia, o si somete el asunto directamente al Tribunal Supremo. Por ello, reitera que la legitimación

activa para presentar una acción ante el foro de instancia, o directamente ante el Tribunal Supremo, recae sobre el Director de la ODIN, y no sobre el notario.

Según surge del expediente, el 9 de febrero de 2024, la señora García entregó su obra notarial para inspección a la Inspectora. Mediante dicha inspección, fueron señaladas varias deficiencias. Por consiguiente, el 9 de julio de 2024, la Inspectora sometió ante la consideración del Director de la ODIN un *Informe de deficiencias de la obra notarial de la Lcda. Ivette Rossana García Cruz, Notario Núm. 20,231 (Regla 77(m) del RN)* (Informe).

Visto el Informe, el 16 de julio de 2024, el Director de la ODIN remitió a la apelante una *Notificación Informe Final de Inspección RUA 20,231 (Regla 77m)*, donde en virtud de lo dispuesto en el *Reglamento Notarial,* supra*,* concedió el término de quince (15) días para que expusiera por escrito su posición y fundamentara cualquier objeción. Asimismo, menciono que, de incumplir con el requerimiento, procedería a elevar el asunto ante la consideración del Tribunal Supremo de Puerto Rico.

El 1 de agosto de 2024, la señora García presentó un documento titulado *Divergencia de Criterio sobre Señalamiento de la Inspección de la Obra de la Notario Ivette García Cruz, RUA 20231*. En esencia, dispuso que no existía disposición legal que le impidiera autorizar un acta de edificación sin la comparecencia del titular de la propiedad sobre la que se edificó, por lo que, solicitó se dejara sin efecto las faltas notariales señaladas en su obra notarial.

El 25 de septiembre de 2024, el Director de la ODIN respondió a las objeciones presentadas por la señora García, en el cual, reiteró y confirmó todos los señalamientos desglosados en el *Informe*. Por consiguiente, le concedió a la apelante un término final de sesenta (60) días para que subsanara las deficiencias señaladas.

Sin embargo, el 15 de noviembre de 2024, la señora García procedió a instar la demanda de epígrafe. Mediante la cual le solicitó al foro primario que atendiera y resolviera la divergencia de criterios con el Director de la ODIN y procediera a declarar que las actas notariales fueron otorgadas conforme a derecho.

El 22 de enero de 2025, la ODIN presentó una moción de desestimación, en la que expuso que era la Inspectora, por instrucciones del Director de la ODIN, quien tenía legitimación activa para presentar un pleito ante el foro primario, y no la apelante.

Así las cosas, el 12 de junio de 2025, el foro *a quo* emitió la *Sentencia*, mediante la cual declaró con lugar la desestimación, por consiguiente, desestimó con perjuicio la demanda.

Conforme a la normativa antes expuesta, los inspectores tienen la facultad de efectuar inspecciones notariales. Una vez finalizado el examen, si el Inspector no aprueba la obra notarial, discutirá con el notario las deficiencias encontradas para que las corrija. De subsistir la falta o divergencia de criterio, el Inspector someterá ante el Director de la ODIN un Informe, quien le notificará al notario para que someta sus objeciones sobre este.

Posteriormente, el Director de la ODIN podrá escoger entre los siguientes cinco (5) cursos de acción: (1) concederle al notario un término adicional para que subsane las faltas; (2) iniciar o instruir al inspector para que inicie un procedimiento de divergencia de criterio; (3) decretar el sobreseimiento, por no justificarse acción posterior alguna; (4) determinar que el notario no ha incurrido en las faltas imputadas y que en tal caso instruirá al inspector para que apruebe la obra notarial; o (5) someterá un informe al Tribunal Supremo junto con cualesquiera escritos que haya recibido del notario para. Regla 79 del Reglamento Notarial, *supra*.

En el presente caso, la señora García, una vez le fueron notificadas las faltas y deficiencias, tenía un término final de sesenta días para que las subsanara, sin embargo, optó por acudir ante el Tribunal de Primera Instancia. No obstante, quien tenía la facultad para instar el pleito ante el foro primario era el Director de la ODIN, instruyendo a la Inspectora para que iniciara un procedimiento de divergencia de criterio. La Ley Notarial y su Reglamento, le brindan la oportunidad al Director de la ODIN, para que escoja entre 5 cursos de acción, y en este caso, decidió concederle un término a la apelante para que subsanara sus faltas.

Nuestro Tribunal Supremo ha sido enfático al establecer que el Director de la ODIN puede seleccionar el curso de acción que entienda más conveniente para la situación que se le presente. En *In re Godínez Morales*, supra, reiteró que "el Director de la ODIN tiene la libertad de escoger cualquiera de los cinco cursos de acción contenidos en la Regla 79 del Reglamento

Notarial, *ante*, ello sin que, *de ninguna manera*, esté obligado a optar por uno en específico."

A su vez, la parte apelada no quebrantó el debido proceso de ley, puesto que, cumplió con las disposiciones expuestas en la Ley Notarial y su Reglamento. La Inspectora realizó los señalamientos sobre la obra notarial, los cuales le fueron notificados a la apelante para su subsanación. Posteriormente, fue presentado el *Informe* ante el Director de la ODIN, quien le concedió un término a la señora García para que expusiera su postura y objeciones, y finalmente, le concedió un término para que subsanara las deficiencias señaladas.

Por ello, concluimos que la Ley Notarial no le da a la apelante legitimación para presentar un pleito como el presentado ante el foro primario. Consecuentemente, no erró el foro primario al desestimar el pleito.

**IV**.

Por los fundamentos antes expuestos, **CONFIRMAMOS** la *Sentencia* apelada.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones